**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| EMMETTE McCORMICK, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 07-0570 (EGS) |
| | ) | |
| DISTRICT OF COLUMBIA, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

<u>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

<u>**INTRODUCTION**</u>

1.) This is an action by plaintiff Emmette McCormick, Jr., a highly regarded Supervisory Correctional Officer successfully employed by the D.C. Department of Corrections from 1984, until his unlawful termination, effective March 31, 2006.

2.) Plaintiff conducted an investigation which ultimately determined that the Department of Corrections Office of Internal Affairs leaked the home addresses of two correctional officers slated to testify in the prosecution of a violent inmate charged with assaulting a third correctional officer.

3.) The unauthorized leak of these correctional officers' home addresses led to one or both officers and their families being physically threatened.

4.) Plaintiff's investigation and report of malfeasance on the part of the Office of Internal Affairs to the Acting Warden of the D.C. Jail and the Director of the Office of Internal Affairs, the

second investigation and report by plaintiff, led to a pretextual investigation of plaintiff's use of force to return three violent inmates to their cells.

5.) Officials of the D.C. Jail who had previously reviewed plaintiff's actions in connection with the foregoing incident concluded that plaintiff's use of force was justified and prevented continued and further aggression by the inmates in question.

6.) Nonetheless, and without cause, the Office of Internal Affairs placed plaintiff under ex parte investigation and pretextually concluded that he had used excessive force in the foregoing incident. Defendants then unlawfully terminated plaintiff from the Department of Corrections without prior notice or due process of law, effective March 31, 2006, based on the undisclosed investigative finding of the Office of Internal Affairs.

7.) Defendants' actions unlawfully and wrongfully deprived plaintiff of protected liberty interests by foreclosing plaintiff from continuing in his chosen occupation and by stigmatizing plaintiff in terminating his employment without due process of law in violation of the Fifth Amendment to the Constitution and 42 U.S.C. §1983; terminated plaintiff in violation of public policy; and subjected plaintiff to one or more prohibited personnel practices in violation of the D.C. Whistleblower Statute, § 1-615.51 et seq.

8.) To remedy defendants' unlawful conduct, plaintiff seeks declaratory and injunctive relief; reinstatement; record correction; a name clearing hearing; compensatory damages in an amount to be determined at trial of not less than $6 million; punitive damages in

an amount no less than ten times the amount of compensatory damages; and an award of his attorneys fees and costs.

### PARTIES AND JURISDICTION

9.) Plaintiff Emmette McCormick, Jr. was employed by the District of Columbia Department of Corrections first as a Correctional Officer and then as a Supervisory Correctional Officer (Lieutenant) from April 16, 1984, until his unlawful termination, effective March 31, 2006. At the time of his unlawful termination, plaintiff was assigned to and working at the D.C. Department of Corrections Central Detention Facility located at 1901 D Street, S.E., Washington, D.C. 20003.

10.) Defendant District of Columbia, although designated pursuant to Article I, Section 8 of the Constitution as the capital of the United States, is a municipal corporation which governs the District of Columbia pursuant to The District of Columbia Self-Government and Governmental Reorganization Act, P.L. No. 93-198, 87 Stat. 774, D.C. Code §1-211. The Department of Corrections, plaintiff's former employer, is an agency of the District of Columbia, the functions of which include, among other matters, operating prisons and jails and providing for the confinement and incarceration of defendants awaiting criminal prosecution, inmates convicted of having committee crimes, and other persons subject to confinement and incarceration within the District of Columbia. The Department of Corrections is headquartered at 1923 Vermont Avenue, N.W., Washington, D.C., 20001, where defendants' unlawful actions toward plaintiff were taken.

11.) Defendant Devon Brown is the Director of the District of Columbia Department of Corrections and, as such, is its chief

executive officer, with final decision making authority over the acts that underlie this Complaint. Defendant Brown is sued here in his official and his individual capacities. Defendant Brown's unlawful actions toward plaintiff were taken at locations within the District of Columbia including, but not limited to, the Department of Corrections headquarters.

12.) Defendant Wanda Patten is the Chief of the Office of Internal Affairs of the District of Columbia Department of Corrections, the unit responsible for internal investigations of alleged crime and misconduct by employees and inmates of the Department of Corrections. As such, defendant Patten has final decision making authority over the inquiries and investigations conducted by the Office of Internal Affairs, including those that underlie this Complaint and led to plaintiff's unlawful termination. Defendant Patten is sued here in her official and her individual capacities. Defendant Patten's unlawful actions toward plaintiff were taken at locations within the District of Columbia including, but not limited to, the Department of Corrections headquarters and the Central Detention Facility.

13.) This action was filed originally in the Superior Court of the District of Columbia. Jurisdiction of the Superior Court was based upon the D.C. Whistleblower Statute, § 1-615.51, et seq; the Fifth Amendment to the Constitution; 42 U.S.C. §1983; and DC Stat §§13-423. Venue lay in the Superior Court because defendants' unlawful actions were taken within the District of Columbia. Notice to the Mayor of plaintiff's claims pursuant to 12 D.C. Code §309 was provided on August 23, 2006. On March 22, 2007, defendants removed this action to this Court.

## STATEMENT OF THE CASE

### Background

14.) Plaintiff Emmette McCormick, Jr., was employed by the District of Columbia Department of Corrections first as a Correctional Officer and then as a Supervisory Correctional Officer (Lieutenant) from April 16, 1984, until his unlawful termination, effective March 31, 2006.

15.) Plaintiff was a highly regarded Correctional and Supervisory Correctional Officer who received awards and commendations during his tenure with the Department of Corrections.

16.) Prior to defendant's unlawful actions, plaintiff's performance was superior and his record of conduct unblemished.

17.) During his tenure with the Department of Corrections, plaintiff was a member of the U.S. Marine Corps and served on active duty in the 1991 Gulf War.

18.) In recognition of his outstanding service, in 1997, plaintiff was appointed Acting Major under the immediate supervision of the Warden of the Department of Corrections Occoquan Facility. As Acting Major, plaintiff served in a supervisory capacity over approximately 600 employees of the Occoquan Facility, including Supervisory Correctional Officers at the Captain rank, and was responsible for the safe and secure confinement of 1300 inmates. Plaintiff served as Acting Major until the Occoquan Facility was closed in April of 1999.

19.) Plaintiff's outstanding performance while at the Occoquan Facility earned him the title of "Acting Major with Distinction" and a substantial cash bonus.

20.) Plaintiff was also selected to serve as a member of the Management Assistance Team, the group of expert consultants appointed by Director Margaret Moore responsible for improving safety and security of the facility to avoid its being placed in receivership.

21.) Due to the efforts and performance of plaintiff and other members of the Management Assistance team, control of the Occoquan Facility by the Department of Corrections was restored, inmate violence was substantially reduced, and sound security procedures were promulgated and re-instituted.

**Plaintiff's Service at the D.C. Jail/Central Detention Facility**

22.) When the Occoquan Facility was closed in 1999, plaintiff was reassigned to the D.C. Jail/Central Detention Facility.

23.) The D.C. Jail/Central Detention Facility is the facility at which the D.C. Department of Corrections confines prisoners who are awaiting trial for crimes and have not been released on bail or on their own recognizance, and incarcerates inmates convicted of crimes during their sentences.

24.) Plaintiff served as a Lieutenant Supervisory Correctional Officer from his initial assignment to the D.C. Jail/Central Detention Facility in 1999 until his unlawful termination in March of 2006.

25.) Plaintiff's duties and responsibilities as a Supervisory Correctional Officer included, but were not limited to, managing and supervising subordinate corrections personnel in the full spectrum of

correctional duties relating to the safety, security, and maintenance of the D.C. Jail/Central Detention Facility, and to the control of inmates within the facility. Plaintiff was also responsible for the performance of these duties himself.

26.) In the latter part of 2004, plaintiff was appointed Acting Captain in Charge of the Special Management Unit at the D.C. Jail/Central Detention Facility, the unit responsible for the maintenance and incarceration of inmates who have been convicted of committing exceptionally violent crimes, have engaged in violence while incarcerated, and have a history of escaping from prison. As Acting Captain, plaintiff served as the senior official of the Special Management Unit.

**Plaintiff's Inquiry Into Activities of the Office of Internal Affairs**

27.) On March 4, 2005, the Acting Warden of the D.C. Jail/Central Detention Facility John Corbett directed plaintiff to assemble his subordinates and locate written statements given to the Department of Corrections Office of Internal Affairs by two correctional officers slated to testify in the prosecution of a violent inmates charged with assaulting a third correctional officer.

28.) The two correctional officers' statements had been taken by the Office of Internal Affairs of the Department of Corrections, the unit responsible for internal investigations of alleged crime and misconduct by employees and inmates of the Department of Corrections.

29.) The two correctional officers' statements were disclosed by the Office of Internal Affairs to the inmate charged in the assault through his attorney without authorization and without redaction of

7

the officers' home addresses, which led to one or both officers and their families being physically threatened by the inmate.

30.) The foregoing statements were taken by defendant Wanda Patten, who was at that time an investigator in the Office of Internal Affairs and, at the time of plaintiff's unlawful termination, Chief of the Office of Internal Affairs.

31.) At Acting Warden Corbett's direction, plaintiff initially instructed a group of correctional officers under his supervision to search the Special Management Unit and inmates of the Special Management Unit for copies of the two officers' statements and for information concerning the statements' unauthorized disclosure. Their search was unsuccessful.

32.) Upon learning that the search by plaintiff's subordinates had been unsuccessful, Acting Warden Corbett instructed plaintiff to conduct the search personally and to head up a team of correctional officers who would assist him.

33.) Plaintiff did so and focused the search on two inmates in particular, one of whom produced unredacted copies of the two correctional officers' statements that had been taken by defendant Patten of the Office of Internal Affairs and yielded information about the statements' unauthorized disclosure by the Office of Internal Affairs.

34.) On March 4, 2005, plaintiff transmitted an Informative Report about his search to Acting Warden Corbett through Major of Operations at the D.C. Jail/Central Detention Facility Stanley Waldren. The Informative Report documented plaintiff's acquisition of

the two correctional officers' statements, conveyed the statements themselves, identified defendant Patten as having taken the statements, and reported the statements' improper disclosure by the Office of Internal Affairs.

### Defendants' Responses To Plaintiff's Informative Report

35.) Plaintiff's Informative Report concerning the Office of Internal Affairs' improper disclosure of the two correctional officers' statements was transmitted to the Office of Internal Affairs in the standard and ordinary course of business of the D.C. Jail/Central Detention Facility.

36.) Among other officials, plaintiff's Informative Report was circulated to and reviewed by defendant Patten.

### Defendants' First Response

37.) No later than March 31, 2005, plaintiff conducted an inquiry at the direction of Shift Captain William Burns into a report submitted by a correctional officer about his seizure of crack cocaine in an inmate's cell.

38.) Plaintiff, who was certified as a correctional officer to conduct drug-testing, examined the seized contraband, and confirmed that it was crack cocaine.

39.) Upon confirming that the seized substance was an illegal drug, plaintiff directed the correctional officer who recovered it to prepare a written report of the seizure.

40.) According to the officer's report, the officer had seized the inmate's crack cocaine with the assistance of a drug-sniffing dog, the Department of Corrections' preferred method of doing so.

41.) Shortly after the officer submitted his written report, plaintiff was advised by a subordinate that the officer's report that the inmate's crack cocaine had been seized with the use of a drug-sniffing dog was false.

42.) A correctional officer's submission of an official report of his activities at the D.C. Jail/Central Correctional Facility that knowingly contained false material information warranted investigation by the Department of Corrections' Office of Internal Affairs and disciplinary action, up to and including termination of employment.

43.) At the direction of Acting Warden Corbett, plaintiff submitted a "re-notification" of the incident in question, which entailed advising the Deputy Director of the D.C. Department of Corrections Patricia Britton-Jackson and defendant Patten about the correctional officer's false report.

44.) Deputy Director Britton-Jackson directed plaintiff to submit a revised report documenting the officer's misrepresentation, and to obtain revised reports from the officer as well.

45.) Once plaintiff did so, defendant Patten then initiated a pretextual, ex parte investigation into the difference between the original and revised reports, which falsely alleged that plaintiff had tampered with the original report in order to clear his name.

46.) As a direct and proximate result of defendant Patten's pretextual, ex parte investigation, the Office of Internal Affairs attempted to coerce plaintiff into resigning from his position with the Department of Corrections or accepting a downgrade to a position lower than Lieutenant Supervisory Correctional Officer.

47.) Despite defendants' efforts, plaintiff refused to resign or accept a downgrade.

Defendants' Second Response

48.) On or about January 13, 2006, plaintiff received an emergency directive from the Command Center of the D.C. Jail/Central Detention Facility to report to one of the inmate housing centers.

49.) Plaintiff learned, upon arriving at the housing center, that approximately 100 inmates were outside of their cells, were disregarding correctional officers' instructions to return to their cells, and were threatening to become violent.

50.) Immediately upon learning of the foregoing potentially violent confrontation, plaintiff began assisting his subordinate correctional officers in securing the inmates' return to their cells.

51.) Despite the instructions of plaintiff and his subordinates, three inmates refused to return to their cells and became violent.

52.) After the officers' instructions were disregarded, and in order to return the inmates to their cells, plaintiff then used reasonable and appropriate physical force and chemical sprays upon three inmates.

53.) Once subdued, the three inmates were offered medical examination and, to the extent necessary, treatment. Afterward, the inmates were placed in a segregated housing section of the D.C. Jail/Central Detention Facility and disciplinary proceedings against them were begun.

54.) Plaintiff then completed a written report of the foregoing incident.

55.) On January 17, 2006, D.C. Jail/Central Detention Facility Acting Major for Administration Stephen Minus transmitted a written report through Acting Deputy Warden of Operations Hulon Willis to Acting Warden Dennis Harrison about the incident identified above in paragraphs 48 through 53.

56.) The foregoing report accurately recounted the incident identified above as well as Mr. McCormick's account of the foregoing incident, including, but not limited to, that the incident was the result of violent behavior on the part of the three inmates in question.

57.) Despite the foregoing accurate report exonerating plaintiff and his subordinate officers, on information and belief, under the direction of defendant Patten, the Office of Internal Affairs prepared a pretextual, ex parte and defamatory finding that plaintiff had engaged in misconduct in connection with the incident identified above, and finalized that report without providing Mr. McCormick notice of its contents or an opportunity to respond, knowing that it could or would provide a basis for terminating plaintiff's employment.

### Plaintiff's Termination By Defendants

58.) On March 9, 2006, by letter issued by defendant Brown, defendants relieved plaintiff of all duties as a Lieutenant Supervisory Correctional Officer and placed plaintiff on administrative leave.

59.) On March 15, 2006, by letter issued by defendant Brown, defendants terminated plaintiff's employment with the D.C. Department

of Corrections, effective March 31, 2006, on the basis of an undisclosed investigative finding of the Office of Internal Affairs.

60.) Defendants terminated plaintiff's employment with the D.C. Department of Corrections without affording plaintiff a pre-termination hearing, and notice of or opportunity to respond to the foregoing pretextual, ex parte investigative finding of the Office of Internal Affairs.

61.) Defendants' actions in placing plaintiff on administrative leave and in terminating plaintiff's employment with the D.C. Department of Corrections were unlawful and wrongful; taken without cause or due process of law; and taken under color of the law of the District of Columbia by officials with final decision-making authority to investigate and terminate supervisory correctional officers without due process of law pursuant to District of Columbia custom and policy. Defendant's actions stigmatized plaintiff, foreclosed plaintiff from pursuing his chosen occupation as a correctional officer, constituted prohibited personnel practices, and were taken in violation of public policy.

62.) Defendants' actions in placing plaintiff on administrative leave and in terminating plaintiff's employment with the D.C. Department of Corrections were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights; outrageously, wantonly, and oppressively; and with legal and actual malice.

COUNT I
(<u>Fifth Amendment – Liberty Interest</u>)

63.) Plaintiff incorporates the allegations in paragraphs 1 through 62 above, as though fully set forth here.

64.) Defendants did not provide plaintiff a copy of the record underlying their decision to terminate him and afford plaintiff a pre-termination hearing in which to contest that record and defendants' reasons for terminating him.

65.) Defendants' termination of plaintiff's employment and participation in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections deprived plaintiff of his liberty interest in the continued pursuit of his chosen occupation as a correctional officer.

66.) Defendants violated the Fifth Amendment to the Constitution in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections and thereby deprived plaintiff of his liberty interest in the continued pursuit of his chosen occupation as a correctional officer without due process of law.

67.) Defendants Patten and Brown violated clearly established rights under the Fifth Amendment to the Constitution of which a reasonable person would have known in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections and thereby deprived plaintiff of his

liberty interest in the continued pursuit of his chosen occupation as a correctional officer without due process of law.

68.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 67 caused plaintiff to suffer pecuniary losses, injuries, and damages including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

69.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 68 caused plaintiff to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

70.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 69 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the Fifth

Amendment to the Constitution; outrageously, wantonly, and oppressively; and with legal and actual malice.

**COUNT II**
**(Fifth Amendment – Liberty Interest – 42 U.S.C. §1983)**

71.) Plaintiff incorporates the allegations in paragraphs 1 through 70 above, as though fully set forth here.

72.) Defendants did not provide plaintiff a copy of the record underlying their decision to terminate him and afford plaintiff a pre-termination hearing in which to contest that record and defendants' reasons for terminating him.

73.) Defendants' termination of plaintiff's employment and participation in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections deprived plaintiff of his liberty interest in the continued pursuit of his chosen occupation as a correctional officer without due process of law.

74.) Defendants violated the Fifth Amendment to the Constitution and defendants Patten and Brown violated clearly established rights under the Fifth Amendment to the Constitution of which a reasonable person would have known in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections and thereby deprived plaintiff of his liberty interest in the continued pursuit of his chosen occupation as a correctional officer without due process of law.

75.) Defendants acted under color of the law of the District of Columbia in terminating plaintiff's employment and participating in

actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections and thereby deprived plaintiff of his liberty interest in the continued pursuit of his chosen occupation as a correctional officer without due process of law. Defendants' actions were carried out by defendants Patten and Brown, officials with final decision-making authority to investigate and terminate supervisory correctional officers without due process of law in furtherance of the policy and custom of defendant District of Columbia.

76.) Defendants violated 42 U.S.C. §1983 in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections by subjecting or causing plaintiff to be subjected to the deprivation of his rights, privileges, or immunities secured under the Fifth Amendment to the Constitution under color of the law of the District of Columbia without due process of law.

77.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 76 caused plaintiff to suffer pecuniary losses, injuries, and damages including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

78.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 77 caused plaintiff to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

79.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 78 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the Fifth Amendment to the Constitution and 42 U.S.C. §1983; outrageously, wantonly, and oppressively; and with legal and actual malice.

**COUNT III**
**(Fifth Amendment – Liberty Interest)**

80.) Plaintiff incorporates the allegations in paragraphs 1 through 79 above, as though fully set forth here.

81.) Defendants did not provide plaintiff a copy of the record underlying their decision to terminate him and afford plaintiff a pre-termination hearing in which to contest that record and defendants' reasons for terminating him.

82.) Defendants' termination of plaintiff's employment and participation in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the

Office of Internal Affairs stigmatized plaintiff without due process of law.

83.) Defendants violated the Fifth Amendment to the Constitution in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections and deprived plaintiff of his liberty interest by stigmatizing plaintiff without due process of law.

84.) Defendants Patten and Brown violated clearly established rights under the Fifth Amendment to the Constitution of which a reasonable person would have known in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections and thereby deprived plaintiff of his liberty interest by stigmatizing plaintiff without due process of law.

85.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 84 caused plaintiff to suffer pecuniary losses, injuries, and damages including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

86.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and

proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 85 caused plaintiff to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

87.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 86 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the Fifth Amendment to the Constitution; outrageously, wantonly, and oppressively; and with legal and actual malice.

### COUNT IV
### (Fifth Amendment – Liberty Interest – 42 U.S.C. §1983)

88.) Plaintiff incorporates the allegations in paragraphs 1 through 87 above, as though fully set forth here.

89.) Defendants did not provide plaintiff a copy of the record underlying their decision to terminate him and afford plaintiff a pre-termination hearing in which to contest that record and defendants' reasons for terminating him.

90.) Defendants' termination of plaintiff's employment and participation in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the

Office of Internal Affairs stigmatized plaintiff without due process of law.

91.) Defendants violated the Fifth Amendment to the Constitution and defendants Patten and Brown violated clearly established rights under the Fifth Amendment to the Constitution of which a reasonable person would have known in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the Office of Internal Affairs and thereby stigmatized plaintiff and deprived plaintiff of his liberty interest in his professional reputation without due process of law.

92.) Defendants acted under color of the law of the District of Columbia in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the Office of Internal Affairs and thereby stigmatized plaintiff and deprived plaintiff of his liberty interest in his professional reputation without due process of law. Defendants' actions were carried out by defendants Patten and Brown, officials with final decision-making authority to investigate and terminate supervisory correctional officers without due process of law in furtherance of the policy and custom of defendant District of Columbia.

93.) Defendants violated 42 U.S.C. §1983 in terminating plaintiff's employment and participating in actions which naturally

and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the Office of Internal Affairs by subjecting or causing plaintiff to be subjected to the deprivation of his rights, privileges, or immunities secured under the Fifth Amendment to the Constitution under color of the law of the District of Columbia without due process of law.

94.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the Office of Internal Affairs stigmatized plaintiff and deprived plaintiff of his liberty interest in his professional reputation as alleged above in paragraphs 1 through 93 caused plaintiff to suffer pecuniary losses, injuries, and damages including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

95.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the Office of Internal Affairs stigmatized plaintiff and deprived plaintiff of his liberty interest in his professional reputation as alleged above in paragraphs 1 through 94 caused plaintiff to suffer non-pecuniary injuries taking the form of emotional pain,

embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

96.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 95 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the Fifth Amendment to the Constitution and 42 U.S.C. §1983; outrageously, wantonly, and oppressively; and with legal and actual malice.

**COUNT V**
**(D.C. Whistleblower Statute, §§1-615.51, et seq.)**

97.) Plaintiff incorporates the allegations in paragraphs 1 through 96 above, as though fully set forth here.

98.) Plaintiff's Informative Report dated March 4, 2005, concerning the Office of Internal Affairs' improper and unauthorized release of the statements of two correctional officers slated to testify in the prosecution of a violent inmate charged with assaulting a third correctional officer as alleged above in paragraphs 27 through 34 constituted a protected disclosure under the D.C. Whistleblower Statute, §1-615.52(a)(6).

99.) Defendant District of Columbia's actions of attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of

Corrections constituted prohibited personnel actions under the D.C. Whistleblower Statute, §1-615.52(a)(5).

100.) Defendant District of Columbia violated the D.C. Whistleblower Statute, §§1-615.51, et seq., in attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of Corrections.

101.) Defendant District of Columbia's actions in attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 100 caused or threatened to cause plaintiff to suffer pecuniary losses, injuries, and damages including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

102.) Defendant District of Columbia's actions in attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged

in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 101 caused plaintiff to suffer to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

103.) Defendant District of Columbia's actions in attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 102 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the D.C. Whistleblower Statute, §§1-615.51, _et_ _seq._; outrageously, wantonly, and oppressively; and with legal and actual malice.

## COUNT VI
### (Wrongful Discharge)

104.) Plaintiff incorporates the allegations in paragraphs 1 through 103 above, as though fully set forth here.

105.) Plaintiff's Informative Report dated March 4, 2005, concerning the Office of Internal Affairs' improper and unauthorized release of the statements of two correctional officers slated to testify in the prosecution of a violent inmate charged with assaulting a third correctional officer as alleged above in paragraphs 27 through 34, disclosed defendants' violation of law including, but not limited

to, D.C. Stat. §2-534, and the public policies embodied therein which include, but are not limited to, the prohibitions on the disclosure of information of a personal nature that would constitute a clearly unwarranted invasion of personal privacy without authorization.

106.) Plaintiff's Informative Report dated March 4, 2005, concerning the Office of Internal Affairs' improper and unauthorized release of the statements of two correctional officers slated to testify in the prosecution of two violent inmates charged with assaulting a third correctional officer as alleged above in paragraphs 27 through 34, disclosed defendants' violation of law including, but not limited to, D.C. Stat. §2-534, and the public policies embodied therein which include, but are not limited to, the prohibitions on the disclosure of investigatory records compiled for law enforcement purposes whose disclosure would endanger the life or safety of law enforcement personnel without authorization.

107.) Defendant District of Columbia wrongfully terminated plaintiff's employment with the D.C. Department of Corrections because plaintiff disclosed defendants' violation of law including, but not limited to, D.C. Stat. §2-534, and the public policies embodied therein as alleged above in paragraphs 1 through 106.

108.) Defendant District of Columbia's actions in wrongfully terminating plaintiff's employment with the D.C. Department of Corrections because plaintiff disclosed defendants' violation of law including, but not limited to, D.C. Stat. §2-534, and the public policies embodied therein as alleged above in paragraphs 1 through 107 caused plaintiff to suffer pecuniary losses, injuries, and damages

including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

109.) Defendant District of Columbia's actions in wrongfully terminating plaintiff's employment with the D.C. Department of Corrections because plaintiff disclosed defendants' violation of law including, but not limited to, D.C. Stat. §2-534, and the public policies embodied therein as alleged above in paragraphs 1 through 108 caused plaintiff to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

110.) Defendant District of Columbia's actions in wrongfully terminating plaintiff's employment with the D.C. Department of Corrections because plaintiff disclosed defendants' violation of law including, but not limited to, D.C. Stat. §2-534, and the public policies embodied therein as alleged above in paragraphs 1 through 109 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights in his continued employment; outrageously, wantonly, and oppressively; and with legal and actual malice.

## PRAYER FOR RELIEF

Wherefore, plaintiff Emmette McCormick, Jr., respectfully requests that the Court enter judgment in his favor and award him the following relief.

A.    An Order declaring that defendants violated plaintiff's rights under the Fifth Amendment to the Constitution, 42 U.S.C. §1983, and the D.C. Whistleblower Statute, §§1-615.51, et seq., in attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of Corrections; and that defendants wrongfully terminated plaintiff in violation of public policy, which restrains and enjoins defendants from further violating plaintiff's rights and wrongfully terminating his employment with the D.C. Department of Corrections.

B.    An Order reinstating plaintiff in the employ of the D.C. Department of Corrections retroactive to March 31, 2006.

C.    Record correction and expunction.

D.    Compensatory damages in an amount to be determined at trial not less than $6 million from all defendants jointly and severally, to compensate plaintiff for pecuniary losses, injuries, and damages proximately caused by defendants' unlawful conduct.

E.    Punitive damages in an amount to be determined at trial no less than ten times the amount of compensatory damages from all defendants jointly and severally;

F.   The attorneys' fees and costs incurred by plaintiff in the prosecution of this action from all defendants jointly and severally.

G.   Such other relief as may be just and appropriate.

### Jury Demand

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

_____/s/_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W.
Suite 305
Washington, D.C.  20004
(202) 955-6968

Counsel for Plaintiff