**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EMMETTE McCORMICK, JR.,            )
                                   )
            Plaintiff,             )
                                   )
       v.                          )        Civil Action No. 07-0570 (EGS)
                                   )
DISTRICT OF COLUMBIA,              )
     et al.,                       )
                                   )
            Defendants.            )
_____)

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO THE COURT'S ORDER TO
COMPEL DISCOVERY FROM THE FEDERAL BUREAU OF PRISONS**

This is an action by plaintiff Emmette McCormick, Jr.; a highly regarded Supervisory

Correctional Officer successfully employed by the D.C. Department of Corrections ("DOC")

from 1984, until his unlawful termination, effective March 31, 2006 (Cplt, ¶1).  Mr. McCormick

conducted an investigation at the D.C. Central Detention Facility, which confirmed that the DOC

Office of Internal Affairs endangered the safety of two correctional officers and their families, by

releasing their home addresses to a violent inmate slated for prosecution for assaulting a third

officer (Id., ¶2).   The DOC Office of Internal Affairs retaliated by engineering a sham

investigation into Mr. McCormick's supposed use of excessive force against an inmate convicted

of first degree of murder, in responding to an emergency call after all the inmates in one housing

unit were released by a junior corrections officer (Id., ¶48-57).

The federal Bureau of Prisons ("BOP") has information that is highly relevant to

plaintiff's claims; specifically the near impossibility of his being employed again as a

correctional officer.   Its participation in third party discovery is essential; and seeks only

information that is completely factual, and can be produced efficiently.  BOP's responses can be readily protected by the Court's outstanding protective Order and, therefore, must be compelled.

The notification letter by the Director of DOC to terminate Mr. McCormick expressly stated that his action was "based on an Internal Affairs Investigative finding," the product of its pretextual, retaliatory investigation (Att. A).  Counts I and II of the Complaint challenge defendants' action on the ground that in terminating Mr. McCormick, they deprived him of his **liberty** in the pursuit of his chosen career without due process of law, in violation of the Fifth Amendment and 42 U.S.C. §1983 (Cplt., ¶¶65, 73).  As they allege:

> Defendants' termination of plaintiff's employment and participation in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections deprived plaintiff of his **liberty interest** in the continued pursuit of his chosen occupation as a correctional officer.

(Id.) (emphasis supplied).  Among the ways for Mr. McCormick to prevail on these two Counts is by demonstrating that defendants' action of terminating him "based on an Internal Affairs Investigative finding" will have "'the broad effect of largely precluding'" Mr. McCormick "'from pursuing'" his "'chosen career'" as a correctional officer.  O'Donnell v. Barry, 148 F.3d 1126, 1141 (D.C. Cir. 1998) (quoting Kartseva v. Department of State, 37 F.3d 1524, 1528 (D.C. Cir.1994) (discussing Board of Regents v. Roth, 408 U.S. 564, 573-78 (1972).

In this regard, it is critical to bear to points in mind:  One is that the Fifth Amendment's protection against the extinguishment of Mr. McCormick's liberty interest without due process is not dependent on his having a property interest in continued employment with DOC; the second is that conflating the two is reversible error.  O'Donnell, supra, 148 F.3d 1139.

In order to garner evidence to demonstrate that his termination upon on an Internal Affairs Investigative finding has all but precluded him from future employment in the correctional field, on June 11, 2008, plaintiff served a Rule 30(b)(6) Notice of Deposition,

Request for Production of Documents, and Subpoena on BOP (Att. B). Plaintiff's discovery was accompanied by a detailed explanation of its purposes, a copy of the Amended Complaint, and all other information required of a private party who seeks to take discovery from the federal government when it is not a party, in accordance with Touhy v. Regan, 340 U.S. 462 (1951).

The purpose behind plaintiff's discovery was straightforward: to prove that Mr. McCormick's termination by DOC will severely preclude his future employment in the field, as shown by the policies of the federal government's national correctional department. BOP responded by refusing to produce a witness or anything other than limited documentation (Att. C). Its grounds were essentially that BOP was being asked to be an expert witness, and that responding would be burdensome and disclose law enforcement techniques and procedures (Id.).

BOP's response was obtuse and ineffectual. As explained in the responsive letter from plaintiff's counsel, BOP's participation was sought as a fact witness, not as an expert witness (Att. D). The Court has already approved a stringent protective order to protect D.C.'s law enforcement interests, which BOP was invited to join (Id.; Att. E). Finally, a party raising an objection to discovery "cannot merely state, in conclusory fashion, that the requests are unduly burdensome." U.S. v. Network Software Associates, 217 F.R.D. 240, 246 (D.D.C. 2003) (citing Athridge v. Aetna Casualty and Surety Co., 184 F.R.D. 181, 191 (D.D.C. 1998). Therefore, BOP must be compelled to respond to plaintiff's discovery.

Respectfully submitted,

_____//s//_____
Robert C. Seldon, Esq.
 D.C. Bar No. 245100
1319 F Street, NW, Suite 200
Washington, D.C. 20004
(202) 393-8200

GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF CORRECTIONS

Office of the Director



March 15, 2006

Mr. Emmett McCormick
542 Sanford Dr.
Fredericksburg, VA 22406

Dear Mr. McCormick:

In accordance with § 3818.2 of the District Personnel Manual (DPM), this is a notice of at least 15 days of the termination of your Management Supervisory Service appointment as Supervisory Correctional Officer, MS-0006-11/09 with the Department of Corrections. This decision is based on an Internal Affairs Investigative finding. Your separation from service with the District government will be effective close of business March 31, 2006. As you know, employment in the Management Supervisory Service is terminable at-will and this termination action is neither grievable nor appealable.

During this notice period, you will be paid at your current salary and you will accrue both annual and sick leave. You will remain on paid administrative leave during this notice period. Pursuant to D.C. Official Code § 1-609.54(b) (2001), you are not entitled to severance pay.

You are to immediately return all building keys, office keys, security badge(s), pass cards(s), cell phone(s), and any government property issued to you as a District government employee. This includes all District government paper-based or computer-based documents contained on computer disks, hard drives, storage drives and on any other type of electronic media containing such documents, in your possession.

Please contact the Reeves Center personnel office at (202) 671-1311 to obtain information regarding benefits and to schedule an exit interview.

Sincerely,

Devon Brown
Director

# *Robert C. Seldon & Associates, P.C.*

### *Attorneys-At-Law*
*1319 F Street, N.W., Suite 200*
*Washington, DC 20004*
*202.39\*3.8200 ·fax: 20.-318.2287*

June 11, 2008

Federal Bureau of Prisons
c/o Kathleen M. Kenney, Esq.
General Counsel
320 First Street, NW
Washington, D.C. 20534

Re:    McCormick v. District of Columbia, et. al, C.A. No. 07-0570 (EGS)

Dear Ms. Kenney:

We represent Emmette McCormick, the plaintiff in the action identified above. Under cover of this letter, we have forwarded a subpoena calling for the deposition of a designated agent of the Bureau of Prisons, pursuant to Federal Rule 30(b)(6), as well as a check for the witness fee and mileage expenses. A copy of the Amended Complaint has also been forwarded for your review.

This letter is intended to satisfy the requirements imposed under Touhy v. Ragen, 340 U.S. 462 (1951).

Mr. McCormick was terminated from his position as a corrections officer with the District of Columbia Department of Corrections as the result of an internal affairs finding. The testimony of a designated agent from the Bureau of Prisons is needed to explain the policies, practices, procedures, and guidelines employed by the Bureau of Prisons in the hiring, re-hiring, employment of, and termination of law enforcement officers.

As the Complaint alleges, this action arises under the Fifth Amendment of the Constitution, 42 U.S.C. § 1983, and the D.C. Whistleblower Statute, §§ 1-615.51 et seq. Mr. McCormick was formerly employed as a supervisory correctional officer with the D.C. Department of Corrections. On March 31, 2006, the Department of Corrections terminated Mr. McCormick on the basis of an internal affairs finding.

Ms. Kathleen M. Kenney
June 11, 2008
Page 2

The subjects of designated agent or agents' testimony will include the Bureau of Prisons' personnel policies, practices, procedures, and guidelines concerning the hiring and re-hiring of applicants for law enforcement officer positions; the hiring and re-hiring of applicants for law enforcement officer positions who have been terminated from previous law enforcement employment; the hiring and re-hiring of applicants over the age of thirty-seven; the employment of law enforcement officers who failed to disclose information on employment applications; the employment of law enforcement officers who engage in misconduct; and the termination of law enforcement officers. There is no substitute for this testimony to provide this information. We anticipate that the deposition will take no more than three hours.

We selected the afternoon of July 3, 2008, for the deposition, a day when another witness in the case will also be deposed. We would very much like to keep to this schedule, but naturally will work to coordinate the deposition with the General Counsel's office.

To my understanding, this information satisfies the Tuohy requirements. If anything more is needed, please contact me and we will be glad to provide it.

I look forward to hearing from you as soon as your schedule permits to confirm the appearance of a designated agent.

Sincerely,

//s//

Jennifer R. Amore

cc:    Ron W. Gill, Esq.
       Emmette McCormick

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

Emmette McCormick, Jr.

V.

District of Columbia, et. al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    07-0570 (EGS)

TO:   Federal Bureau of Prisons
      320 First Street, NW
      Washington, DC 20534

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | |
| | DATE AND TIME |
| | |

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Robert C. Seldon & Associates, P.C. 1319 F Street, NW, Ste 200, Washington D.C. 20004 | DATE AND TIME 7/3/2008 1:00 pm |
| --- | --- |

☐   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |
| | |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) *Atty. for Plaintiff* | DATE 6/11/2008 |
| --- | --- |
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER Jennifer R. Amore, Esq., Robert C. Seldon & Associates, P.C. 1319 F Street, NW, Ste 200, Washington, D.C. 20004 | |

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EMMETTE McCORMICK, JR. | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 07-0570 (EGS) |
| | ) |
| DISTRICT OF COLUMBIA, et al., | ) |
| Defendants. | ) |
| | ) |

## <u>NOTICE OF RULE 30(b)(6) DEPOSITION</u>

TO:    U.S. Federal Bureau of Prisons
c/o Kathleen M. Kenney, Esq., General Counsel
320 First Street, NW
Washington, DC 20534

PLEASE TAKE NOTICE that, pursuant to Rules 26, 30, and 34 of the Federal Rules of Civil Procedure, Plaintiff will take the deposition upon oral examination of the designated representative(s) of the U.S. Federal Bureau of Prisons, before a Notary Public or other person authorized to administer oaths at the offices of counsel for Plaintiff, Robert C. Seldon, Esq., Robert C. Seldon & Associates, P.C., 1319 F Street, N.W., Suite 200, Washington, D.C. 20004.

The subjects of the foregoing deposition will be as follows:

1.)    Bureau of Prison regulations, practices, guidelines and procedures concerning the hiring or re-hiring of correctional officers or other law enforcement officers, including but not limited to application processes, background checks, interview processes, and security clearance processes;

2.)    Bureau of Prison regulations, practices, guidelines and procedures concerning the hiring or re-hiring of correctional officers, or other law enforcement officers, who were terminated from a previous law enforcement or correctional officer position for misconduct,

1

including, but not limited to, the use of excessive force on an inmate, suspect, or other person; assault on an inmate, suspect, or other person; and/or misrepresentation or lying under oath during an internal investigation or other investigation or administrative inquiry, or in court or other adjudicative proceeding.

3.)    Bureau of Prison regulations, practices, guidelines and procedures concerning the hiring or re-hiring of correctional officers, or other law enforcement officers, who have been terminated from a previous law enforcement or correctional officer position for misconduct, charges of misconduct, conviction of a crime, criminal investigation, criminal activity, or for findings of an internal affairs investigation;

4.)    Bureau of Prison regulations, practices, guidelines and procedures concerning the hiring or re-hiring of applicants for correctional officer positions, or other law enforcement officer positions who are over the age of thirty-seven (37);

5.)    Bureau of Prison regulations, practices, guidelines and procedures concerning the employment and continued employment of correctional officers, or other law enforcement officers, who fail to disclose information on applications for employment including, but not limited to, the termination of prior employment;

6.)    Bureau of Prison regulations, practices, guidelines, and procedures concerning the employment and continued employment of correctional officers, or other law enforcement officers, who engage in misconduct, charges of misconduct, conviction of a crime, for findings of an internal affairs investigation, criminal activity, or criminal investigation; and

7.)    Bureau of Prison regulations, practices, guidelines and procedures of and in terminating correctional officers or other law enforcement officers.

The deposition will be conducted at the date and time specified below:

| Deponent | Date | Time |
|---|---|---|
| U.S. Bureau<br>    Of Prisons, Designee | July 3, 2008 | 1:00 PM |

Please bring the documents identified in Attachment A to the deposition.

Counsel for defendants is invited to attend and cross-examine.


Respectfully submitted,


_____/s/_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100
Jennifer R. Amore, Esq.
  D.C. Bar No. 975907
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C.  20004
202.393.8200

3

# ATTACHMENT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                        |     |                                  |
|----------------------------------------|-----|----------------------------------|
| **EMMETTE McCORMICK, JR.**             | )   |                                  |
|                                        | )   |                                  |
| **Plaintiff,**                         | )   |                                  |
|                                        | )   | **Civ. Action No. 07-0570 (EGS)**|
| v.                                     | )   |                                  |
|                                        | )   |                                  |
| **DISTRICT OF COLUMBIA, et al.,**      | )   |                                  |
|                                        | )   |                                  |
| **Defendants.**                        | )   |                                  |
|                                        | )   |                                  |

## REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, Emmette McCormick, Jr., hereby propounds Plaintiff's Request for Production of Documents, pursuant to Rule 34, Fed. R. Civ. P, on the Federal Bureau of Prisons. Serve a copy of your Answers and Objections on July 3, 2008 at the deposition of the designated party, at Robert C. Seldon & Associates, P.C., 1319 F Street, N.W., Suite 200, Washington, D.C., 20004. Respond in accordance with the Instructions and Definitions contained herein, the Federal Rules of Civil Procedure, and the Local Rules of this Court.

## INSTRUCTIONS

This discovery initiative extends to all responsive information and documents within your custody or possession or otherwise subject to your control, whether located on your business premises, or at the business premises or residences of your agents, attorneys, officers, representatives, employees, contractors, sub-contractors, parents, holding companies, affiliates, offices, officials, members, directors, representatives, employees, agencies, departments, councils, bureaus, subsidiaries, units, divisions, and parts, or elsewhere.

**Segregate and index all responsive documents according to the number of the Request For Production to which they respond**.

1

If any responsive information or documents cannot be or are not produced in full due to their loss, destruction, or misplacement, identify all such information and documents; provide a complete and accurate account of the reasons for non-production and the circumstances surrounding their destruction, loss, or unavailability; identify persons with personal knowledge of the circumstances surrounding their destruction, loss, or unavailability; and respond to the fullest extent possible.

If any responsive documents or information is withheld on the grounds of privilege, identify:

        a.)     the author(s), address(es), recipients(s), present custodian(s), and date(s) of all such documents;

        b.)     all other persons who have seen or learned of all or part of any such document;

        c.)     the subject matter and contents of each such document;

        d.)     the specific basis for the claim of privilege; and

        e.)     all other information necessary to adjudicate the propriety of your claim of privilege.

In responding to this discovery initiative, you have a duty to consult every available source including, but not limited to your agents, attorneys, officers, representatives, employees, contractors, sub-contractors, affiliates, officers, directors, representatives, employees, agencies, departments, bureaus, subsidiaries, units, divisions, councils, and parts.

This discovery initiative is continuing in character and must be supplemented to the extent required by the Federal Rules of Civil Procedure, and the Local Rules of this Court.

### ***DEFINITIONS***

Unless the text indicates to the contrary:

A.    "You" or "your" means the Federal Bureau of Prisons, and all of your agents, attorneys, officers, representatives, employees, contractors, sub-contractors, affiliates, parents, holding companies, offices, officials, members, directors, representatives, employees, agencies, departments, bureaus, subsidiaries, units, divisions, parts, offices, parents, predecessors, successors, or assigns.   Where documents, knowledge or information in your custody or possession or subject to your control is requested or referred to, such request or reference includes documents, knowledge, and information in the custody or possession or subject to the control of all of the foregoing persons and entities.

B.    "The agency" means the Federal Bureau of Prisons.

C.    "Document" means the original and all non-identical copies of all writings, emails, drawings, graphs, charts, and plans; photographs, tapes, and recordings; compact disks, laser disks, computer disks and other computer recordations or storage mediums and print-outs thereof; and digital, electronic, and electro-magnetic records.

D.    "Person" means any individual, government entity, natural person, corporation, partnership, association, joint venture, sole proprietorship, limited liability company, firm or other business enterprise or legal entity, or any of such person's agents, attorneys, officers, representatives, employees, contractors, sub-contractors, affiliates, offices, officials, members, directors, representatives, employees, agencies, departments, bureaus, subsidiaries, units, divisions, parts, parents, holding companies, predecessors, successors, or assigns.

E.    "Identify" with respect to a person means to provide each such person's name and last known business address, place of residence, and business and residence telephone numbers.

F.      "Identify" with respect to a document means to provide a description thereof, its title, the date of its creation and transmission(s), its author(s), its recipient(s), its subject matter(s), and all attachments there.

G.      "And" and "or" mean "and/or."

H.      Use of the singular is deemed to include the plural and vice versa.

I.      Use of the feminine is deemed to include the masculine and vice versa.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.)      All regulations, policies, procedures, and/or guidelines concerning the hiring or re-hiring of correctional officers or other law enforcement officers, including but not limited to application processes, background checks, interview processes, and security clearance processes.

2.)      All documents that refer or relate, to the hiring or re-hiring of correctional officers, including but not limited to, job applications, background information forms, security clearance forms, and application and interview rating guidelines and/or forms.

3.)      All regulations, policies, procedures, and/or guidelines concerning the continued employment of correctional officers, or other law enforcement officers, who were terminated from a previous correctional officer position, or other law enforcement officer position, for misconduct, including but not limited to, the use of excessive force on an inmate, suspect, or other person; assault on an inmate, suspect, or other person; and/or misrepresentation or lying under oath during an internal investigation or other investigation or administrative inquiry, or in court or other adjudicative proceeding.

5.)      All regulations, practices, guidelines, and procedures concerning the hiring or re-hiring of correctional officers, or other law enforcement officers, who have been terminated from a previous law enforcement or correctional officer position for misconduct, charges of

misconduct, conviction of a crime, criminal investigation, criminal activity, or for findings of an internal affairs investigation.

6.)     All regulations, practices, guidelines, and procedures concerning the hiring or re-hiring of applicants for correctional officer positions, or other law enforcement positions, who are over the age of thirty-seven (37).

7.)     All regulations, practices, guidelines, and procedures concerning the employment and continued employment of correctional officers, or other law enforcement officers, who fail to disclose information on applications for employment including, but not limited to, the termination of prior employment.

8.)     All regulations, practices, guidelines, and procedures concerning the employment and continued employment of correctional officers, or other law enforcement officers, who engage in misconduct, charges of misconduct, conviction of a crime, for findings of an internal affairs investigation, criminal activity, or criminal activity.

Respectfully submitted,

_____//s//_____
Robert C. Seldon, Esq.
 D.C. Bar No. 245100
Jennifer R. Amore, Esq.
 D.C. Bar No. 975907
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C.  20004
202.393.8200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of June 2008 I served a copy of the foregoing Notice of Rule 30(b)(6) Deposition and Request for Production of Documents by e-mail, upon:

Ronald W. Gill, Esq.
Assistant Attorney General
Office of the Attorney General
District of Columbia
Civil Litigation Division, Section III
441 Fourth St., N.W. Sixth Fl. South
Washington, DC 20001

_____//s/_____
Jennifer R. Ambre

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

Case 1:07-cv-00570-EGS   Document 29-3   Filed 07/16/2008   Page 15 of 44

**ROBERT C. SELDON & ASSOCIATES, P.C.**
GENERAL OPERATING ACCOUNT
1319 F. STREET, NW, SUITE 305
WASHINGTON, DC 20004

2344

Access National Bank.Com
Progressive Business Banking
Reston, VA 20191

68-903/560

6/11/2008

PAY TO THE
ORDER OF   Federal Bureau of Prisons

$ **50.00

Fifty and 00/100****************************************************************************************************************** DOLLARS

Federal Bureau of Prisons

MEMO   Witness fee (McCormick, E.)

AUTHORIZED SIGNATURE   MP

⑈002344⑈ ⑆056009039⑆ ⑈2572600⑈

**ROBERT C. SELDON & ASSOCIATES, P.C.**   2344

**ROBERT C. SELDON & ASSOCIATES, P.C.**   2344

13272

www.checksforless.com 800-245-5775   Order # 723246-1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMMETTE McCORMICK, JR.                )
                                      )
        Plaintiff,                    )
                                      )
                v.                    )    Civ. Action No. 07-0570 (EGS)
                                      )
DISTRICT OF COLUMBIA, et al.,         )
                                      )
        Defendants.                   )
_____)

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.) This is an action by plaintiff Emmette McCormick, Jr., a highly regarded Supervisory Correctional Officer successfully employed by the D.C. Department of Corrections from 1984, until his unlawful termination, effective March 31, 2006.

2.) Plaintiff conducted an investigation which ultimately determined that the Department of Corrections Office of Internal Affairs leaked the home addresses of two correctional officers slated to testify in the prosecution of a violent inmate charged with assaulting a third correctional officer.

3.) The unauthorized leak of these correctional officers' home addresses led to one or both officers and their families being physically threatened.

4.) Plaintiff's investigation and report of malfeasance on the part of the Office of Internal Affairs to the Acting Warden of the D.C. Jail and the Director of the Office of Internal Affairs, the

second investigation and report by plaintiff, led to a pretextual investigation of plaintiff's use of force to return three violent inmates to their cells.

5.) Officials of the D.C. Jail who had previously reviewed plaintiff's actions in connection with the foregoing incident concluded that plaintiff's use of force was justified and prevented continued and further aggression by the inmates in question.

6.) Nonetheless, and without cause, the Office of Internal Affairs placed plaintiff under ex parte investigation and pretextually concluded that he had used excessive force in the foregoing incident. Defendants then unlawfully terminated plaintiff from the Department of Corrections without prior notice or due process of law, effective March 31, 2006, based on the undisclosed investigative finding of the Office of Internal Affairs.

7.) Defendants' actions unlawfully and wrongfully deprived plaintiff of protected liberty interests by foreclosing plaintiff from continuing in his chosen occupation and by stigmatizing plaintiff in terminating his employment without due process of law in violation of the Fifth Amendment to the Constitution and 42 U.S.C. §1983; terminated plaintiff in violation of public policy; and subjected plaintiff to one or more prohibited personnel practices in violation of the D.C. Whistleblower Statute, § 1-615.51 et seq.

8.) To remedy defendants' unlawful conduct, plaintiff seeks declaratory and injunctive relief; reinstatement; record correction; a name clearing hearing; compensatory damages in an amount to be determined at trial of not less than $6 million; punitive damages in

2

an amount no less than ten times the amount of compensatory damages; and an award of his attorneys fees and costs.

## PARTIES AND JURISDICTION

9.) Plaintiff Emmétte McCormick, Jr. was employed by the District of Columbia Department of Corrections first as a Correctional Officer and then as a Supervisory Correctional Officer (Lieutenant) from April 16, 1984, until his unlawful termination, effective March 31, 2006. At the time of his unlawful termination, plaintiff was assigned to and working at the D.C. Department of Corrections Central Detention Facility located at 1901 D Street, S.E., Washington, D.C. 20003.

10.) Defendant District of Columbia, although designated pursuant to Article I, Section 8 of the Constitution as the capital of the United States, is a municipal corporation which governs the District of Columbia pursuant to The District of Columbia Self-Government and Governmental Reorganization Act, P.L. No. 93-198, 87 Stat. 774, D.C. Code §1-211. The Department of Corrections, plaintiff's former employer, is an agency of the District of Columbia, the functions of which include, among other matters, operating prisons and jails and providing for the confinement and incarceration of defendants awaiting criminal prosecution, inmates convicted of having committee crimes, and other persons subject to confinement and incarceration within the District of Columbia. The Department of Corrections is headquartered at 1923 Vermont Avenue, N.W., Washington, D.C., 20001, where defendants' unlawful actions toward plaintiff were taken.

11.) Defendant Devon Brown is the Director of the District of Columbia Department of Corrections and, as such, is its chief

executive officer, with final decision making authority over the acts
that underlie this Complaint.    Defendant Brown is sued here in his
official and his individual capacities.    Defendant Brown's unlawful
actions toward plaintiff were taken at locations within the District of
Columbia including, but not limited to, the Department of Corrections
headquarters.

12.) Defendant Wanda Patten is the Chief of the Office of Internal
Affairs of the District of Columbia Department of Corrections, the
unit responsible for internal investigations of alleged crime and
misconduct by employees and inmates of the Department of Corrections.
As such, defendant Patten has final decision making authority over the
inquiries and investigations conducted by the Office of Internal
Affairs, including those that underlie this Complaint and led to
plaintiff's unlawful termination.    Defendant Patten is sued here in her
official and her individual capacities.    Defendant Patten's unlawful
actions toward plaintiff were taken at locations within the District of
Columbia including, but not limited to, the Department of Corrections
headquarters and the Central Detention Facility.

13.) This action was filed originally in the Superior Court of the
District of Columbia.    Jurisdiction of the Superior Court was based
upon the D.C. Whistleblower Statute, § 1-615.51, et seq; the Fifth
Amendment to the Constitution; 42 U.S.C. §1983; and DC Stat §§13-423.
Venue lay in the Superior Court because defendants' unlawful actions
were taken within the District of Columbia.    Notice to the Mayor of
plaintiff's claims pursuant to 12 D.C. Code §309 was provided on
August 23, 2006.    On March 22, 2007, defendants removed this action to
this Court.

## STATEMENT OF THE CASE

### Background

14.) Plaintiff Emmette McCormick, Jr., was employed by the District of Columbia Department of Corrections first as a Correctional Officer and then as a Supervisory Correctional Officer (Lieutenant) from April 16, 1984, until his unlawful termination, effective March 31, 2006.

15.) Plaintiff was a highly regarded Correctional and Supervisory Correctional Officer who received awards and commendations during his tenure with the Department of Corrections.

16.) Prior to defendant's unlawful actions, plaintiff's performance was superior and his record of conduct unblemished.

17.) During his tenure with the Department of Corrections, plaintiff was a member of the U.S. Marine Corps and served on active duty in the 1991 Gulf War.

18.) In recognition of his outstanding service, in 1997, plaintiff was appointed Acting Major under the immediate supervision of the Warden of the Department of Corrections Occoquan Facility. As Acting Major, plaintiff served in a supervisory capacity over approximately 600 employees of the Occoquan Facility, including Supervisory Correctional Officers at the Captain rank, and was responsible for the safe and secure confinement of 1300 inmates. Plaintiff served as Acting Major until the Occoquan Facility was closed in April of 1999.

19.) Plaintiff's outstanding performance while at the Occoquan Facility earned him the title of "Acting Major with Distinction" and a substantial cash bonus.

20.) Plaintiff was also selected to serve as a member of the Management Assistance Team, the group of expert consultants appointed by Director Margaret Moore responsible for improving safety and security of the facility to avoid its being placed in receivership.

21.) Due to the efforts and performance of plaintiff and other members of the Management Assistance team, control of the Occoquan Facility by the Department of Corrections was restored, inmate violence was substantially reduced, and sound security procedures were promulgated and re-instituted.

**Plaintiff's Service at the D.C. Jail/Central Detention Facility**

22.) When the Occoquan Facility was closed in 1999, plaintiff was reassigned to the D.C. Jail/Central Detention Facility.

23.) The D.C. Jail/Central Detention Facility is the facility at which the D.C. Department of Corrections confines prisoners who are awaiting trial for crimes and have not been released on bail or on their own recognizance, and incarcerates inmates convicted of crimes during their sentences.

24.) Plaintiff served as a Lieutenant Supervisory Correctional Officer from his initial assignment to the D.C. Jail/Central Detention Facility in 1999 until his unlawful termination in March of 2006.

25.) Plaintiff's duties and responsibilities as a Supervisory Correctional Officer included, but were not limited to, managing and supervising subordinate corrections personnel in the full spectrum of

6

correctional duties relating to the safety, security, and maintenance of the D.C. Jail/Central Detention Facility, and to the control of inmates within the facility.  Plaintiff was also responsible for the performance of these duties himself.

26.) In the latter part of 2004, plaintiff was appointed Acting Captain in Charge of the Special Management Unit at the D.C. Jail/Central Detention Facility, the unit responsible for the maintenance and incarceration of inmates who have been convicted of committing exceptionally violent crimes, have engaged in violence while incarcerated, and have a history of escaping from prison.  As Acting Captain, plaintiff served as the senior official of the Special Management Unit.

## Plaintiff's Inquiry Into Activities of the Office of Internal Affairs

27.) On March 4, 2005, the Acting Warden of the D.C. Jail/Central Detention Facility John Corbett directed plaintiff to assemble his subordinates and locate written statements given to the Department of Corrections Office of Internal Affairs by two correctional officers slated to testify in the prosecution of a violent inmates charged with assaulting a third correctional officer.

28.) The two correctional officers' statements had been taken by the Office of Internal Affairs of the Department of Corrections, the unit responsible for internal investigations of alleged crime and misconduct by employees and inmates of the Department of Corrections.

29.) The two correctional officers' statements were disclosed by the Office of Internal Affairs to the inmate charged in the assault through his attorney without authorization and without redaction of

7

the officers' home addresses, which led to one or both officers and their families being physically threatened by the inmate.

30.) The foregoing statements were taken by defendant Wanda Patten, who was at that time an investigator in the Office of Internal Affairs and, at the time of plaintiff's unlawful termination, Chief of the Office of Internal Affairs.

31.) At Acting Warden Corbett's direction, plaintiff initially instructed a group of correctional officers under his supervision to search the Special Management Unit and inmates of the Special Management Unit for copies of the two officers' statements and for information concerning the statements' unauthorized disclosure. Their search was unsuccessful.

32.) Upon learning that the search by plaintiff's subordinates had been unsuccessful, Acting Warden Corbett instructed plaintiff to conduct the search personally and to head up a team of correctional officers who would assist him.

33.) Plaintiff did so and focused the search on two inmates in particular, one of whom produced unredacted copies of the two correctional officers' statements that had been taken by defendant Patten of the Office of Internal Affairs and yielded information about the statements' unauthorized disclosure by the Office of Internal Affairs.

34.) On March 4, 2005, plaintiff transmitted an Informative Report about his search to Acting Warden Corbett through Major of Operations at the D.C. Jail/Central Detention Facility Stanley Waldren. The Informative Report documented plaintiff's acquisition of

8

the two correctional officers' statements, conveyed the statements
themselves, identified defendant Patten as having taken the
statements, and reported the statements' improper disclosure by the
Office of Internal Affairs.

### Defendants' Responses To Plaintiff's Informative Report

35.) Plaintiff's Informative Report concerning the Office of
Internal Affairs' improper disclosure of the two correctional
officers' statements was transmitted to the Office of Internal Affairs
in the standard and ordinary course of business of the D.C.
Jail/Central Detention Facility.

36.) Among other officials, plaintiff's Informative Report was
circulated to and reviewed by defendant Patten.

### Defendants' First Response

37.) No later than March 31, 2005, plaintiff conducted an
inquiry at the direction of Shift Captain William Burns into a report
submitted by a correctional officer about his seizure of crack cocaine
in an inmate's cell.

38.) Plaintiff, who was certified as a correctional officer to
conduct drug-testing, examined the seized contraband, and confirmed
that it was crack cocaine.

39.) Upon confirming that the seized substance was an illegal
drug, plaintiff directed the correctional officer who recovered it to
prepare a written report of the seizure.

40.) According to the officer's report, the officer had seized
the inmate's crack cocaine with the assistance of a drug-sniffing dog,
the Department of Corrections' preferred method of doing so.

41.) Shortly after the officer submitted his written report, plaintiff was advised by a subordinate that the officer's report that the inmate's crack cocaine had been seized with the use of a drug-sniffing dog was false.

42.) A correctional officer's submission of an official report of his activities at the D.C. Jail/Central Correctional Facility that knowingly contained false material information warranted investigation by the Department of Corrections' Office of Internal Affairs and disciplinary action, up to and including termination of employment.

43.) At the direction of Acting Warden Corbett, plaintiff submitted a "re-notification" of the incident in question, which entailed advising the Deputy Director of the D.C. Department of Corrections Patricia Britton-Jackson and defendant Patten about the correctional officer's false report.

44.) Deputy Director Britton-Jackson directed plaintiff to submit a revised report documenting the officer's misrepresentation, and to obtain revised reports from the officer as well.

45.) Once plaintiff did so, defendant Patten then initiated a pretextual, ex parte investigation into the difference between the original and revised reports, which falsely alleged that plaintiff had tampered with the original report in order to clear his name.

46.) As a direct and proximate result of defendant Patten's pretextual, ex parte investigation, the Office of Internal Affairs attempted to coerce plaintiff into resigning from his position with the Department of Corrections or accepting a downgrade to a position lower than Lieutenant Supervisory Correctional Officer.

47.) Despite defendants' efforts, plaintiff refused to resign or accept a downgrade.

### Defendants' Second Response

48.) On or about January 13, 2006, plaintiff received an emergency directive from the Command Center of the D.C. Jail/Central Detention Facility to report to one of the inmate housing centers.

49.) Plaintiff learned, upon arriving at the housing center, that approximately 100 inmates were outside of their cells, were disregarding correctional officers' instructions to return to their cells, and were threatening to become violent.

50.) Immediately upon learning of the foregoing potentially violent confrontation, plaintiff began assisting his subordinate correctional officers in securing the inmates' return to their cells.

51.) Despite the instructions of plaintiff and his subordinates, three inmates refused to return to their cells and became violent.

52.) After the officers' instructions were disregarded, and in order to return the inmates to their cells, plaintiff then used reasonable and appropriate physical force and chemical sprays upon three inmates.

53.) Once subdued, the three inmates were offered medical examination and, to the extent necessary, treatment. Afterward, the inmates were placed in a segregated housing section of the D.C. Jail/Central Detention Facility and disciplinary proceedings against them were begun.

54.) Plaintiff then completed a written report of the foregoing incident.

55.) On January 17, 2006, D.C. Jail/Central Detention Facility Acting Major for Administration Stephen Minus transmitted a written report through Acting Deputy Warden of Operations Hulon Willis to Acting Warden Dennis Harrison about the incident identified above in paragraphs 48 through 53.

56.) The foregoing report accurately recounted the incident identified above as well as Mr. McCormick's account of the foregoing incident, including, but not limited to, that the incident was the result of violent behavior on the part of the three inmates in question.

57.) Despite the foregoing accurate report exonerating plaintiff and his subordinate officers, on information and belief, under the direction of defendant Patten, the Office of Internal Affairs prepared a pretextual, _ex parte_ and defamatory finding that plaintiff had engaged in misconduct in connection with the incident identified above, and finalized that report without providing Mr. McCormick notice of its contents or an opportunity to respond, knowing that it could or would provide a basis for terminating plaintiff's employment.

### Plaintiff's Termination By Defendants

58.) On March 9, 2006, by letter issued by defendant Brown, defendants relieved plaintiff of all duties as a Lieutenant Supervisory Correctional Officer and placed plaintiff on administrative leave.

59.) On March 15, 2006, by letter issued by defendant Brown, defendants terminated plaintiff's employment with the D.C. Department

12

of Corrections, effective March 31, 2006, on the basis of an undisclosed investigative finding of the Office of Internal Affairs.

60.) Defendants terminated plaintiff's employment with the D.C. Department of Corrections without affording plaintiff a pre-termination hearing, and notice of or opportunity to respond to the foregoing pretextual, ex parte investigative finding of the Office of Internal Affairs.

61.) Defendants' actions in placing plaintiff on administrative leave and in terminating plaintiff's employment with the D.C. Department of Corrections were unlawful and wrongful; taken without cause or due process of law; and taken under color of the law of the District of Columbia by officials with final decision-making authority to investigate and terminate supervisory correctional officers without due process of law pursuant to District of Columbia custom and policy. Defendant's actions stigmatized plaintiff, foreclosed plaintiff from pursuing his chosen occupation as a correctional officer, constituted prohibited personnel practices, and were taken in violation of public policy.

62.) Defendants' actions in placing plaintiff on administrative leave and in terminating plaintiff's employment with the D.C. Department of Corrections were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights; outrageously, wantonly, and oppressively; and with legal and actual malice.

COUNT I
(Fifth Amendment - Liberty Interest)

63.) Plaintiff incorporates the allegations in paragraphs 1 through 62 above, as though fully set forth here.

64.) Defendants did not provide plaintiff a copy of the record underlying their decision to terminate him and afford plaintiff a pre-termination hearing in which to contest that record and defendants' reasons for terminating him.

65.) Defendants' termination of plaintiff's employment and participation in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections deprived plaintiff of his liberty interest in the continued pursuit of his chosen occupation as a correctional officer.

66.) Defendants violated the Fifth Amendment to the Constitution in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections and thereby deprived plaintiff of his liberty interest in the continued pursuit of his chosen occupation as a correctional officer without due process of law.

67.) Defendants Patten and Brown violated clearly established rights under the Fifth Amendment to the Constitution of which a reasonable person would have known in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections and thereby deprived plaintiff of his

14

liberty interest in the continued pursuit of his chosen occupation as a correctional officer without due process of law.

68.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 67 caused plaintiff to suffer pecuniary losses, injuries, and damages including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

69.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 68 caused plaintiff to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

70.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 69 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the Fifth

Amendment   to   the   Constitution;   outrageously,   wantonly,   and
oppressively; and with legal and actual malice.

### COUNT II
### (Fifth Amendment – Liberty Interest – 42 U.S.C. §1983)

71.) Plaintiff incorporates the allegations in paragraphs 1
through 70 above, as though fully set forth here.

72.) Defendants did not provide plaintiff a copy of the record
underlying their decision to terminate him and afford plaintiff a pre-
termination hearing in which to contest that record and defendants'
reasons for terminating him.

73.) Defendants' termination of plaintiff's employment and
participation in actions which naturally and proximately caused the
termination of plaintiff's employment with the D.C. Department of
Corrections deprived plaintiff of his liberty interest in the
continued pursuit of his chosen occupation as a correctional officer
without due process of law.

74.) Defendants violated the Fifth Amendment to the Constitution
and defendants Patten and Brown violated clearly established rights
under the Fifth Amendment to the Constitution of which a reasonable
person would have known in terminating plaintiff's employment and
participating in actions which naturally and proximately caused the
termination of plaintiff's employment with the D.C. Department of
Corrections and thereby deprived plaintiff of his liberty interest in
the continued pursuit of his chosen occupation as a correctional
officer without due process of law.

75.) Defendants acted under color of the law of the District of
Columbia in terminating plaintiff's employment and participating in

actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections and thereby deprived plaintiff of his liberty interest in the continued pursuit of his chosen occupation as a correctional officer without due process of law.  Defendants' actions were carried out by defendants Patten and Brown, officials with final decision-making authority to investigate and terminate supervisory correctional officers without due process of law in furtherance of the policy and custom of defendant District of Columbia.

76.) Defendants violated 42 U.S.C. §1983 in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections by subjecting or causing plaintiff to be subjected to the deprivation of his rights, privileges, or immunities secured under the Fifth Amendment to the Constitution under color of the law of the District of Columbia without due process of law.

77.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 76 caused plaintiff to suffer pecuniary losses, injuries, and damages including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

78.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 77 caused plaintiff to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

79.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 78 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the Fifth Amendment to the Constitution and 42 U.S.C. §1983; outrageously, wantonly, and oppressively; and with legal and actual malice.

### COUNT III
### (Fifth Amendment – Liberty Interest)

80.) Plaintiff incorporates the allegations in paragraphs 1 through 79 above, as though fully set forth here.

81.) Defendants did not provide plaintiff a copy of the record underlying their decision to terminate him and afford plaintiff a pre-termination hearing in which to contest that record and defendants' reasons for terminating him.

82.) Defendants' termination of plaintiff's employment and participation in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the

18

Office of Internal Affairs stigmatized plaintiff without due process of law.

83.) Defendants violated the Fifth Amendment to the Constitution in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections and deprived plaintiff of his liberty interest by stigmatizing plaintiff without due process of law.

84.) Defendants Patten and Brown violated clearly established rights under the Fifth Amendment to the Constitution of which a reasonable person would have known in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections and thereby deprived plaintiff of his liberty interest by stigmatizing plaintiff without due process of law.

85.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 84 caused plaintiff to suffer pecuniary losses, injuries, and damages including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

86.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and

proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 85 caused plaintiff to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

87.) Defendants' actions in unlawfully terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 86 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the Fifth Amendment to the Constitution; outrageously, wantonly, and oppressively; and with legal and actual malice.

### COUNT IV
### (Fifth Amendment – Liberty Interest – 42 U.S.C. §1983)

88.) Plaintiff incorporates the allegations in paragraphs 1 through 87 above, as though fully set forth here.

89.) Defendants did not provide plaintiff a copy of the record underlying their decision to terminate him and afford plaintiff a pre-termination hearing in which to contest that record and defendants' reasons for terminating him.

90.) Defendants' termination of plaintiff's employment and participation in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the

Office of Internal Affairs stigmatized plaintiff without due process of law.

91.) Defendants violated the Fifth Amendment to the Constitution and defendants Patten and Brown violated clearly established rights under the Fifth Amendment to the Constitution of which a reasonable person would have known in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the Office of Internal Affairs and thereby stigmatized plaintiff and deprived plaintiff of his liberty interest in his professional reputation without due process of law.

92.) Defendants acted under color of the law of the District of Columbia in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the Office of Internal Affairs and thereby stigmatized plaintiff and deprived plaintiff of his liberty interest in his professional reputation without due process of law. Defendants' actions were carried out by defendants Patten and Brown, officials with final decision-making authority to investigate and terminate supervisory correctional officers without due process of law in furtherance of the policy and custom of defendant District of Columbia.

93.) Defendants violated 42 U.S.C. §1983 in terminating plaintiff's employment and participating in actions which naturally

and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the Office of Internal Affairs by subjecting or causing plaintiff to be subjected to the deprivation of his rights, privileges, or immunities secured under the Fifth Amendment to the Constitution under color of the law of the District of Columbia without due process of law.

94.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the Office of Internal Affairs stigmatized plaintiff and deprived plaintiff of his liberty interest in his professional reputation as alleged above in paragraphs 1 through 93 caused plaintiff to suffer pecuniary losses, injuries, and damages including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

95.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections on the basis of a pretextual and defamatory finding of the Office of Internal Affairs stigmatized plaintiff and deprived plaintiff of his liberty interest in his professional reputation as alleged above in paragraphs 1 through 94 caused plaintiff to suffer non-pecuniary injuries taking the form of emotional pain,

embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

96.) Defendants' actions in terminating plaintiff's employment and participating in actions which naturally and proximately caused the termination of plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 95 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the Fifth Amendment to the Constitution and 42 U.S.C. §1983; outrageously, wantonly, and oppressively; and with legal and actual malice.

## COUNT V
### (D.C. Whistleblower Statute, §§1-615.51, et seq.)

97.) Plaintiff incorporates the allegations in paragraphs 1 through 96 above, as though fully set forth here.

98.) Plaintiff's Informative Report dated March 4, 2005, concerning the Office of Internal Affairs' improper and unauthorized release of the statements of two correctional officers slated to testify in the prosecution of a violent inmate charged with assaulting a third correctional officer as alleged above in paragraphs 27 through 34 constituted a protected disclosure under the D.C. Whistleblower Statute, §1-615.52(a)(6).

99.) Defendant District of Columbia's actions of attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of

Corrections constituted prohibited personnel actions under the D.C. Whistleblower Statute, §1-615.52(a)(5).

100.) Defendant District of Columbia violated the D.C. Whistleblower Statute, §§1-615.51, et seq., in attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of Corrections.

101.) Defendant District of Columbia's actions in attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 100 caused or threatened to cause plaintiff to suffer pecuniary losses, injuries, and damages including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

102.) Defendant District of Columbia's actions in attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged

in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 101 caused plaintiff to suffer to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

103.) Defendant District of Columbia's actions in attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of Corrections as alleged above in paragraphs 1 through 102 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the D.C. Whistleblower Statute, §§1-615.51, et seq.; outrageously, wantonly, and oppressively; and with legal and actual malice.

### COUNT VI
### (Wrongful Discharge)

104.) Plaintiff incorporates the allegations in paragraphs 1 through 103 above, as though fully set forth here.

105.) Plaintiff's Informative Report dated March 4, 2005, concerning the Office of Internal Affairs' improper and unauthorized release of the statements of two correctional officers slated to testify in the prosecution of a violent inmate charged with assaulting a third correctional officer as alleged above in paragraphs 27 through 34, disclosed defendants' violation of law including, but not limited

25

to, D.C. Stat. §2-534, and the public policies embodied therein which include, but are not limited to, the prohibitions on the disclosure of information of a personal nature that would constitute a clearly unwarranted invasion of personal privacy without authorization.

106.) Plaintiff's Informative Report dated March 4, 2005, concerning the Office of Internal Affairs' improper and unauthorized release of the statements of two correctional officers slated to testify in the prosecution of two violent inmates charged with assaulting a third correctional officer as alleged above in paragraphs 27 through 34, disclosed defendants' violation of law including, but not limited to, D.C. Stat. §2-534, and the public policies embodied therein which include, but are not limited to, the prohibitions on the disclosure of investigatory records compiled for law enforcement purposes whose disclosure would endanger the life or safety of law enforcement personnel without authorization.

107.) Defendant District of Columbia wrongfully terminated plaintiff's employment with the D.C. Department of Corrections because plaintiff disclosed defendants' violation of law including, but not limited to, D.C. Stat. §2-534, and the public policies embodied therein as alleged above in paragraphs 1 through 106.

108.) Defendant District of Columbia's actions in wrongfully terminating plaintiff's employment with the D.C. Department of Corrections because plaintiff disclosed defendants' violation of law including, but not limited to, D.C. Stat. §2-534, and the public policies embodied therein as alleged above in paragraphs 1 through 107 caused plaintiff to suffer pecuniary losses, injuries, and damages

26

including, but not limited to, lost backpay, lost frontpay, diminished and delayed participation in the retirement program available to correctional officers employed D.C. Department of Corrections, and other commensurate benefits.

109.) Defendant District of Columbia's actions in wrongfully terminating plaintiff's employment with the D.C. Department of Corrections because plaintiff disclosed defendants' violation of law including, but not limited to, D.C. Stat. §2-534, and the public policies embodied therein as alleged above in paragraphs 1 through 108 caused plaintiff to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

110.) Defendant District of Columbia's actions in wrongfully terminating plaintiff's employment with the D.C. Department of Corrections because plaintiff disclosed defendants' violation of law including, but not limited to, D.C. Stat. §2-534, and the public policies embodied therein as alleged above in paragraphs 1 through 109 were egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights in his continued employment; outrageously, wantonly, and oppressively; and with legal and actual malice.

### PRAYER FOR RELIEF

Wherefore, plaintiff Emmette McCormick, Jr., respectfully requests that the Court enter judgment in his favor and award him the following relief.

A.    An Order declaring that defendants violated plaintiff's rights under the Fifth Amendment to the Constitution, 42 U.S.C. §1983, and the D.C. Whistleblower Statute, §§1-615.51, et seq., in attempting to coerce plaintiff into resigning from or accepting a downgrade with the D.C. Department of Corrections, preparing a pretextual and defamatory finding by the Office of Internal Affairs that plaintiff had engaged in misconduct, placing plaintiff on administrative leave, and terminating plaintiff's employment with the D.C. Department of Corrections; and that defendants wrongfully terminated plaintiff in violation of public policy, which restrains and enjoins defendants from further violating plaintiff's rights and wrongfully terminating his employment with the D.C. Department of Corrections.

B.    An Order reinstating plaintiff in the employ of the D.C. Department of Corrections retroactive to March 31, 2006.

C.    Record correction and expunction.

D.    Compensatory damages in an amount to be determined at trial not less than $6 million from all defendants jointly and severally, to compensate plaintiff for pecuniary losses, injuries, and damages proximately caused by defendants' unlawful conduct.

E.    Punitive damages in an amount to be determined at trial no less than ten times the amount of compensatory damages from all defendants jointly and severally;

F.    The attorneys' fees and costs incurred by plaintiff in the prosecution of this action from all defendants jointly and severally.

G.    Such other relief as may be just and appropriate.

## Jury Demand

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

_____/s/_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W.
Suite 305
Washington, D.C.  20004
(202) 955-6968

Counsel for Plaintiff



**U.S. Department of Justice**

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*

*555 Fourth St., N.W.*
*Washington, D.C.  20530*

June 24, 2008

Jennifer R. Amore, Esq.
Robert C. Seldon & Associates
1319 F Street, NW, Suite 200
Washington, DC 20004

*via First Class Mail, fax (202) 318-2287, and email jra@rcseldon-associates.com*

Re:   **Emmette McCormick, Jr. v. District of Columbia**
      Civil Action No.: 07-0570 (EGS) (D.D.C.)

Dear Ms. Amore:

    This responds to your subpoena *duces tecum*, your Notice of Rule 30(b)(6) Deposition, and your *Touhy* request, all issued to the Federal Bureau of Prisons ("BOP") and dated June 11, 2008.  As explained below, BOP grants in part the request for information, denies it in part, and objects to deposition and other requests for information.

    As explained in your written submissions, your subpoena *duces tecum* seeks production from BOP of:

    1.    All regulations policies, procedures, and/or guidelines concerning the hiring or re-hiring of correctional officers or other law enforcement officers, including but not limited to application processes, background checks, interview processes, and security clearance processes.

    2.    All documents that refer or relate, to the hiring or re-hiring of correctional officers, including but not limited to, job applications, background information forms, security clearance forms, and application and interview rating guidelines and/or forms.

    3.    All regulations, policies, procedures, and/or guidelines concerning the continued employment of correctional officers, or other law enforcement officers, who were terminated from a previous correctional officer position, or other law enforcement position, for misconduct, including but not limited to, the use of excessive force on an inmate, suspect, or other person; assault on an inmate, suspect, or other person; and/or misrepresentation or lying under oath during an internal

investigation or other investigation or administrative inquiry, or in court or other adjudicative proceeding.

4.    All regulations, policies, procedures, and/or guidelines concerning the hiring or re-hiring of correctional officers, or other law enforcement officers, who were terminated from a previous correctional officer position, or other law enforcement position, for misconduct, charges of misconduct, conviction of a crime, criminal investigation, criminal activity, or for findings of an internal affairs investigation.

5.    All regulations, policies, procedures, and/or guidelines concerning the hiring or re-hiring of correctional officers, or other law enforcement officers, who are over the age of thirty-seven (37).

6.    All regulations, policies, procedures, and/or guidelines concerning the employment and continued employment of correctional officers, or other law enforcement officers, who fail to disclose information on applications for employment including, but not limited to, the termination of prior employment; and

7.    All regulations, policies, procedures, and/or guidelines concerning the continued employment of correctional officers, or other law enforcement officers, who engage in misconduct, charges of misconduct, conviction of a crime, for findings of an internal affairs investigation, criminal activity, or criminal activity.

The subpoena requires production of the records by July 3, 2008.  Your Notice of Rule 30(b)(6) Deposition requests the deposition of a designated agent of the BOP to testify to the same matters, also on July 3, 2008.

According to the complaint you provided with your requests, the above-captioned case involves claims of employment discrimination brought by your client, a former employee of the District of Columbia Department of Corrections.  BOP is not a party to the above-captioned civil action, nor have you provided any information suggesting that BOP has had any role in the underlying events at issue in the civil action.

In response to your request for written records, please be advised that the BOP has identified two policy documents, referred to as "program statements" responsive to your request. These documents are entitled Program Statement 3000.03 Human Resource Management Manual (Dec. 19, 2007), and Program Statement 3420.09 Standards of Employee Conduct (Feb. 5, 1999), both of which are available on the BOP's public website (www.bop.gov).  Because you may access them directly via the internet, it is not necessary to enclose them herein.

As to any other records that may be responsive to your numerous requests, BOP objects to the requests and refuses to produce them, pursuant to Federal Rule of Civil Procedure

2

("FRCP") 45(c)(3)(A)(iv), which protects a party served with a subpoena duces tecum from undue burden. Your request would require a broad and extensive search for additional information, which may or may not exist, yet there is no indication that the additional time, effort, and expense would locate records of marginal relevance beyond the publicly available information described above. Indeed, because that it does not appear that BOP is in any way connected to the events of the litigation, it is difficult to see how any of the requested material is even relevant at all. Accordingly, the balance struck by Rule 45 strongly weighs against your request. See, e.g., Watts v. SEC, 482 F.3d 501, 509 (D.C. Cir. 2007); see generally FRCP 26(b).

Further, BOP objects to producing any documents responsive to your request for information concerning the practice of performing background checks on and obtaining security clearances for employees or prospective employees. Pursuant to 28 C.F.R. § 16.26(a)(5), disclosure of this information would reveal investigatory records compiled for law enforcement purposes, and would disclose investigative techniques and procedures the effectiveness of which would thereby be impaired. Such disclosure is prohibited by Department of Justice regulations. Additionally, Rule 45(c)(3)(A)(iii) of the FRCP protects the disclosure of information that is privileged or otherwise protected material.

With regard to your request for the deposition of a BOP representative, BOP's position is that, based upon a review of the information you provided, this constitutes the disclosure of an unretained expert opinion, specifically prohibited by FRCP Rule 45(c)(3)(B)(ii), and therefore, BOP will not comply. See Watts, 482 F.3d at 509 (noting the need to protect "the government's interest in not being used as a speakers' bureau for private litigants."). Moreover, you have not provided information required for the court even to consider modifying your requests, per Rule 45(c)(3)(C), because, first, your assertion that the information is available only from BOP is unpersuasive, even if true, in that there is no antecedent explanation for why BOP's information is relevant, much less critical, to the case. Second, you have not offered the reasonable compensation for the efforts your requests necessarily impose on BOP.

BOP requests you withdraw the subpoena and Notice of Deposition and send written confirmation of the withdrawal to Assistant United States Attorney Alan Burch by 2:00pm, Wednesday, June 25, 2008. If we do not receive written confirmation by then, BOP will move to quash the subpoena and Notice. Please call Mr. Burch at (202) 514-7204 to discuss the matter further.

Sincerely,

JEFFREY A. TAYLOR
United States Attorney

By:    ___/s/_____
       Alan Burch
       Assistant United States Attorney

3

# *Robert C. Seldon & Associates, P.C.*

*Attorneys-At-Law*
*1319 F Street, N.W., Suite 200*
*Washington, DC  20004*
*202.393.8200  ·fax: 202.318.2287*

*Sender's Email:* jra@rcseldon-associates.com

July 9, 2008

<u>**VIA EMAIL & FIRST CLASS MAIL**</u>
Mr. Alan Burch
Assistant United States Attorney
Civil Division
555 Fourth Street, NW
Washington, DC 20530

Re:    <u>**McCormick v. District of Columbia, C.A. No. 07-0570**</u>

Dear Mr. Burch,

I am writing in response to your June 24, 2008 letter.  It is our understanding based upon your letter that the BOP grants in part the request for information, denies it in part, and objects to the deposition and other requests for information.

BOP fundamentally misunderstands the reason for seeking to depose a designated agent of the BOP and obtain copies of relevant documents.  It is <u>not</u> to serve as an expert witness –  the information sought from BOP is central to the case.  Plaintiff's claims arise, in part, from the Fifth Amendment of the Constitution as well as 42 U.S.C. § 1983.  Plaintiff was terminated based upon an Internal Affairs finding.  He alleges that the District of Columbia's termination of his employment deprived him of his liberty interest in his continued pursuit of his chosen occupation as a correctional officer without due process of law.  The information sought from BOP is central to proving Plaintiff's claim that he is unable to pursue his chosen occupation as a correctional officer when he was terminated from a law enforcement position based upon an Internal Affairs finding.  <u>See</u> O'Donnell v. Barry, 148 F.3d 1126, 1139-40 (D.C. Cir. 1998)

BOP's participation as a third party, fact witness in discovery is undeniably necessary.  As the primary federal government agency that employs correctional officers, BOP's policies, procedures, and practices are directly relevant to this litigation.  As such, the document requests

served on BOP are necessary, and the requests are narrowly tailored for the information sought. The argument that seven document requests present an undue burden on the Agency due to the return date is meritless. The July 3, 2008 deadline was continued, and the discovery period on this case was extended to August 18, 2008, in great part to allow time for discovery from BOP. This extension provides ample time for BOP to conduct a reasonable search for requested documents, apart from the two program statements cited in the June 24, 2008 letter.[1] Further, we are willing to work with you in scheduling the deposition of the BOP agent at a mutually convenient time so that the Agency may locate relevant documents to bring to the deposition.

Regarding BOP's objection to the Rule 30(b)(6) deposition, this objection, as well, is groundless. The deposition of a BOP representative is not being sought for the purposes of an unretained expert opinion. As described above, Plaintiff's claims, in part, derive from a violation of his liberty interest in pursuing his chosen occupation under the Fifth Amendment to the Constitution and 42 U.S.C. § 1983. Due to his termination from the District of Columbia Department of Corrections, on the basis of an Internal Affairs finding, Plaintiff is unable to pursue his chosen occupation in law enforcement. The deposition of a BOP agent is necessary in order to obtain testimony concerning the federal government's policies, procedures, and practices concerning the employment of correctional officers.

There is already a protective order in place ensuring the confidentiality of records designated for confidential treatment by either party. A copy is enclosed with this letter. We are amenable to extending the coverage of the protective order to BOP or entering into a separate protective order if you consider one necessary.

As for BOP's statement that reasonable compensation was not offered, enclosed with the Notice of Deposition and subpoena *duces tecum* was a check for $50.00, the standard witness appearance and travel fees. The deposition will occur in Washington, D.C. and does not require extensive travel on the part of the BOP agent. Accordingly, we believe $50.00 is reasonable compensation for the Agency's efforts.

If BOP is unwavering in its position to our requests, then we will set up a conference with Judge Emmette Sullivan next week, as per his instructions at the initial scheduling conference. Please let us know your availability next week so we can contact Chambers.

---

[1] We have obtained Program Statements 3000.03 Human Resources Management Manual (December 19, 2007) and 3420.09 Standards of Employment Conduct (February 5, 1999). Please provide the page citations in these documents that are responsive to our requests.

Should you have any questions, or would like to discuss this further, please do not hesitate to contact us.


Sincerely,


//s//

Robert C. Seldon
Jennifer R. Amore


cc: Emmette McCormick, Jr.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMMETTE McCORMICK, JR.,                )
                                       )
         Plaintiff,                    )
                                       )
    v.                                 )  Civil Action No. 07-0570 (EGS)
                                       )
DISTRICT OF COLUMBIA, et al.,          )
                                       )
         Defendants.                   )
                                       )

## STIPULATED PROTECTIVE ORDER

The parties to this action anticipate seeking and/or disclosing personnel, medical, corrections and law enforcement records that are likely to contain confidential information, including, but not limited to, information and records protected by D.C. Code § 1-631.01 (2001), 6 DCMR § 3100 *et seq.*, or the Health Insurance Portability and Protection Act. In order to permit the parties to discover and disclose relevant confidential information and records, pursuant to Rule 26 of the Federal Rules of Civil Procedure, the parties agree and it is hereby:

ORDERED that, subject to the terms of this Protective Order, counsel for defendants is authorized to release information and records otherwise protected from disclosure by law without obtaining prior written consent of the individuals to whom such records pertain provided that such information is reasonably related to this litigation.

ORDERED that whenever counsel for any party believes that it may be disclosing personnel, medical, corrections and law enforcement records that are likely to contain confidential information, including, but not limited to, information and records protected by D.C. Code § 1-

1

631.01 (2001), 6 DCMR § 3100 *et seq.*, or the Health Insurance Portability and Protection Act, or that may contain other types of confidential, corrections, or law enforcement information, the following procedures shall be employed:

   1.)    Counsel for the party producing records containing confidential information shall designate information and records as subject to this Order by letter or by marking documents containing such information with the notation "CONFIDENTIAL" or "CONFIDENTIAL MEDICAL." Either party designating material as protected hereunder represents that it has done so in good faith and pursuant to a <u>bona fide</u> belief that such materials are in fact confidential, deserving of protection, and entitled to protection under this Protective Order.

   2.)    Upon request from the other party, counsel for the producing party will promptly explain its basis for designating material as being subject to the Protective Order.

   3.)    Either party's counsel may, at any time, object to the designation of material as protected. In the event of any such objection, the designating party's counsel agrees to confer with counsel for the objecting party as promptly as practicable to attempt to resolve the objection informally. Should the designating and objecting parties be unable to resolve the objection informally, the objecting party may submit such dispute to the Court for resolution. Until the Court resolves the dispute, the material shall be treated as protected.

   4.)    Documents identified as "CONFIDENTIAL" pursuant to this Protective Order shall be used only with respect to the litigation of this action and not disseminated to persons other than the named parties; counsel for the named parties or their agents or experts for use with respect to this litigation; witnesses in the course of deposition or at trial, in the good faith belief that examination with respect to confidential documents is necessary for legitimate discovery

2

purposes; and this Court and its employees, the triers of fact and court reporters transcribing testimony herein and notarizing officers.

5.)    Documents identified as "CONFIDENTIAL MEDICAL" pursuant to this Protective Order shall be used only with respect to the litigation of this action and not disseminated to persons other than counsel of record for the parties, or their agents or experts for use with respect to this litigation; witnesses in the course of deposition or at trial, in the good faith belief that examination with respect to confidential documents is necessary for legitimate discovery purposes; and this Court and its employees, the triers of fact and court reporters transcribing testimony herein and notarizing officers. No current or former officials or employees of the District of Columbia or the Department of Corrections, with the exception of the General Counsel, Deputy General Counsel, other mutual agreeable agency counsel at the Department of Corrections, or individually named defendants, shall have access to plaintiff's records designated "CONFIDENTIAL MEDICAL," although the Court will upon request reconsider such access at a time when defendant believes such access has become necessary for purposes of considering settlement and/or trial.

6.)    Prior to the disclosure of "CONFIDENTIAL" OR "CONFIDENTIAL MEDICAL" documents or information to any persons described in the preceding paragraph other than counsel of record, counsel for the parties shall provide such persons with a copy of this Order and shall advise them that the disclosure of these documents is subject to the terms of this Protective Order. Confidential documents shall be disclosed to an expert or an individual defendant only after such person has signed a copy of this Protective Order thereby affirming that they have read and agree to be bound by the terms of this Protective Order. Upon request, counsel for the parties shall

3

advise opposing counsel in writing that he has complied with the provisions of this Order. "CONFIDENTIAL MEDICAL" documents or information that is provided to counsel for fewer than all parties' shall be provided to counsel for all parties upon receipt.

7.)    Defendants may redact from these confidential documents the following types of information: home addresses, home or personal phone numbers, personal e-mail addresses, dates of birth, Social Security Numbers, health and life insurance information, personal automobile information, and any medical documentation; provided, however, that upon request by counsel for plaintiff, unless the person to whom such information pertains has consented to defendants' counsel of record or agency counsel at the Department of Corrections accepting service of process on his behalf, accepting a notice of deposition on his behalf, or arranging for plaintiff's counsel to communicate with that individual, home addresses, home or personal phone numbers, and personal e-mail addresses shall be provided to counsel for plaintiff absent further Order of the Court if such information is in defendant's possession.

8.)    When this proceeding has concluded and the time for an appeal or appeals has expired, Plaintiff shall within sixty (60) days of written request by counsel: (1) either destroy, or gather and return to counsel, all such confidential records including those provided to experts and summaries or abstracts of confidential records provided to or possessed by experts, and (2) serve on counsel a letter signed by counsel, certifying that to the best of counsel's knowledge and belief, all such confidential records have been either destroyed, or gathered and returned.

9.)    This Protective Order shall continue in effect after the conclusion of this action. Counsel for the parties may retain abstracts or summaries of confidential records which contain counsel's mental impressions or opinions or such abstracts or summaries. Such abstracts and

4

summaries shall remain subject to this Protective Order.

10.)    The parties shall not file "CONFIDENTIAL" OR "CONFIDENTIAL MEDICAL" on the public docket of this action.

11.)    If any party intends to file any motion, opposition, reply or any other filing prior to trial and attach thereto or set forth the relevant portion of records that have been designated as subject to this Order pursuant to paragraph one, the parties shall file two copies of such filing ("Version One" and "Version Two") with the Clerk. Version One shall redact only the specific information designated pursuant to paragraph one of this Consent Order and shall be filed on the public record. Version Two shall contain no redactions and shall be filed in the Clerk's Office in sealed envelopes or other approved sealed containers on which shall be endorsed the title to this action, a brief description of the contents of such sealed envelope or container, and the words "under seal."

12.)    Nothing in this Protective Order should be taken as limiting the right of any party to offer documents and information covered by this Order into the record of this action in redacted form that deletes "CONFIDENTIAL" and "CONFIDENTIAL MEDICAL" information and records and from which such information cannot be determined.

13.)    Nothing contained in this Protective Order shall be construed as precluding Plaintiff or Defendants from introducing materials that are subject to this Order, or the contents thereof, into evidence at the trial of this case, at which point the continued confidential treatment of "CONFIDENTIAL" OR "CONFIDENTIAL MEDICAL" documents or information will be adjudicated de novo.

14.)    This Order is without prejudice to the rights of any party to seek from the Court

the modification of this Order or to object the a party's designation of documents or information

as "CONFIDENTIAL" OR "CONFIDENTIAL MEDICAL."

SO ORDERED:

EMMET G. SULLIVAN
United States District Judge

Dated this ____ day of ____, 2007.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EMMETTE McCORMICK, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 07-0570 (EGS)** |
| | ) |
| **DISTRICT OF COLUMBIA, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## STIPULATED PROTECTIVE ORDER

The parties to this action anticipate seeking and/or disclosing personnel, medical, corrections and law enforcement records that are likely to contain confidential information, including, but not limited to, information and records protected by D.C. Code § 1-631.01 (2001), 6 DCMR § 3100 *et seq.*, or the Health Insurance Portability and Protection Act. In order to permit the parties to discover and disclose relevant confidential information and records, pursuant to Rule 26 of the Federal Rules of Civil Procedure, the parties agree and it is hereby:

ORDERED that, subject to the terms of this Protective Order, counsel for defendants is authorized to release information and records otherwise protected from disclosure by law without obtaining prior written consent of the individuals to whom such records pertain provided that such information is reasonably related to this litigation.

ORDERED that whenever counsel for any party believes that it may be disclosing personnel, medical, corrections and law enforcement records that are likely to contain confidential information, including, but not limited to, information and records protected by D.C. Code § 1-

631.01 (2001), 6 DCMR § 3100 *et seq.*, or the Health Insurance Portability and Protection Act, or that may contain other types of confidential, corrections, or law enforcement information, the following procedures shall be employed:

    1.)    Counsel for the party producing records containing confidential information shall designate information and records as subject to this Order by letter or by marking documents containing such information with the notation "CONFIDENTIAL" or "CONFIDENTIAL MEDICAL." Either party designating material as protected hereunder represents that it has done so in good faith and pursuant to a <u>bona fide</u> belief that such materials are in fact confidential, deserving of protection, and entitled to protection under this Protective Order.

    2.)    Upon request from the other party, counsel for the producing party will promptly explain its basis for designating material as being subject to the Protective Order.

    3.)    Either party's counsel may, at any time, object to the designation of material as protected. In the event of any such objection, the designating party's counsel agrees to confer with counsel for the objecting party as promptly as practicable to attempt to resolve the objection informally. Should the designating and objecting parties be unable to resolve the objection informally, the objecting party may submit such dispute to the Court for resolution. Until the Court resolves the dispute, the material shall be treated as protected.

    4.)    Documents identified as "CONFIDENTIAL" pursuant to this Protective Order shall be used only with respect to the litigation of this action and not disseminated to persons other than the named parties; counsel for the named parties or their agents or experts for use with respect to this litigation; witnesses in the course of deposition or at trial, in the good faith belief that examination with respect to confidential documents is necessary for legitimate discovery

purposes; and this Court and its employees, the triers of fact and court reporters transcribing testimony herein and notarizing officers.

5.) Documents identified as "CONFIDENTIAL MEDICAL" pursuant to this Protective Order shall be used only with respect to the litigation of this action and not disseminated to persons other than counsel of record for the parties, or their agents or experts for use with respect to this litigation; witnesses in the course of deposition or at trial, in the good faith belief that examination with respect to confidential documents is necessary for legitimate discovery purposes; and this Court and its employees, the triers of fact and court reporters transcribing testimony herein and notarizing officers. No current or former officials or employees of the District of Columbia or the Department of Corrections, with the exception of the General Counsel, Deputy General Counsel, other mutual agreeable agency counsel at the Department of Corrections, or individually named defendants, shall have access to plaintiff's records designated "CONFIDENTIAL MEDICAL," although the Court will upon request reconsider such access at a time when defendant believes such access has become necessary for purposes of considering settlement and/or trial.

6.) Prior to the disclosure of "CONFIDENTIAL" OR "CONFIDENTIAL MEDICAL" documents or information to any persons described in the preceding paragraph other than counsel of record, counsel for the parties shall provide such persons with a copy of this Order and shall advise them that the disclosure of these documents is subject to the terms of this Protective Order. Confidential documents shall be disclosed to an expert or an individual defendant only after such person has signed a copy of this Protective Order thereby affirming that they have read and agree to be bound by the terms of this Protective Order. Upon request, counsel for the parties shall

advise opposing counsel in writing that he has complied with the provisions of this Order. "CONFIDENTIAL MEDICAL" documents or information that is provided to counsel for fewer than all parties' shall be provided to counsel for all parties upon receipt.

7.)    Defendants may redact from these confidential documents the following types of information: home addresses, home or personal phone numbers, personal e-mail addresses, dates of birth, Social Security Numbers, health and life insurance information, personal automobile information, and any medical documentation; provided, however, that upon request by counsel for plaintiff, unless the person to whom such information pertains has consented to defendants' counsel of record or agency counsel at the Department of Corrections accepting service of process on his behalf, accepting a notice of deposition on his behalf, or arranging for plaintiff's counsel to communicate with that individual, home addresses, home or personal phone numbers, and personal e-mail addresses shall be provided to counsel for plaintiff absent further Order of the Court if such information is in defendant's possession.

8.)    When this proceeding has concluded and the time for an appeal or appeals has expired, Plaintiff shall within sixty (60) days of written request by counsel: (1) either destroy, or gather and return to counsel, all such confidential records including those provided to experts and summaries or abstracts of confidential records provided to or possessed by experts, and (2) serve on counsel a letter signed by counsel, certifying that to the best of counsel's knowledge and belief, all such confidential records have been either destroyed, or gathered and returned.

9.)    This Protective Order shall continue in effect after the conclusion of this action. Counsel for the parties may retain abstracts or summaries of confidential records which contain counsel's mental impressions or opinions or such abstracts or summaries. Such abstracts and

4

summaries shall remain subject to this Protective Order.

10.)    The parties shall not file "CONFIDENTIAL" OR "CONFIDENTIAL MEDICAL" on the public docket of this action.

11.)    If any party intends to file any motion, opposition, reply or any other filing prior to trial and attach thereto or set forth the relevant portion of records that have been designated as subject to this Order pursuant to paragraph one, the parties shall file two copies of such filing ("Version One" and "Version Two") with the Clerk. Version One shall redact only the specific information designated pursuant to paragraph one of this Consent Order and shall be filed on the public record. Version Two shall contain no redactions and shall be filed in the Clerk's Office in sealed envelopes or other approved sealed containers on which shall be endorsed the title to this action, a brief description of the contents of such sealed envelope or container, and the words "under seal."

12.)    Nothing in this Protective Order should be taken as limiting the right of any party to offer documents and information covered by this Order into the record of this action in redacted form that deletes "CONFIDENTIAL" and "CONFIDENTIAL MEDICAL" information and records and from which such information cannot be determined.

13.)    Nothing contained in this Protective Order shall be construed as precluding Plaintiff or Defendants from introducing materials that are subject to this Order, or the contents thereof, into evidence at the trial of this case, at which point the continued confidential treatment of "CONFIDENTIAL" OR "CONFIDENTIAL MEDICAL" documents or information will be adjudicated de novo.

14.)    This Order is without prejudice to the rights of any party to seek from the Court

5

the modification of this Order or to object the a party's designation of documents or information

as "CONFIDENTIAL" OR "CONFIDENTIAL MEDICAL."

SO ORDERED:

EMMET G. SULLIVAN
United States District Judge

Dated this _____ day of _____, 2007.