UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-------------------------------------------------------
:
EMMETTE MCCORMICK, JR.,               :   CASE NO. 1:07-CV-570
:
       Plaintiff,                              :
:
vs.                                                     :   OPINION & ORDER – AMENDED
:   [Resolving Doc. No. 72.]
THE DISTRICT OF COLUMBIA, *et al*.,   :
:
       Defendants.                           :
:
-------------------------------------------------------

JAMES S. GWIN,[1] UNITED STATES DISTRICT JUDGE:

    In this long-running dispute, Plaintiff Emmette McCormick, Jr. says the District and individual defendants Wanda Patten and Devon Brown terminated his employment with the District of Columbia's Department of Corrections in violation of District of Columbia law and his Fifth Amendment rights. Defendants now seek summary judgement. They say that McCormick had no constitutionally-protected interest, that existing statutes provide adequate process for challenging a wrongful termination, that his termination was neither retaliatory nor wrongful, and that qualified immunity protects the individual defendants. Plaintiff McCormick opposes the motion because, he says, genuine disputes of material fact necessitate a jury trial. Because the Court finds that District statutes afforded McCormick adequate process, that the individual defendants are entitled to qualified immunity and that he has not shown that his discharge was retaliatory, the Court GRANTS Defendants' motion for summary judgment as to Counts I, II, III, IV, and V. Because the Court lacks

---

[1] The Honorable James S. Gwin of the United States District Court for the Northern District of Ohio, sitting by designation.

Case No. 1:07-CV-570
Gwin, J.

jurisdiction over Plaintiff's wrongful discharge claim, the Court DISMISSES Count VI under Federal Rule of Civil Procedure 12(b)(1).

## I. Facts

In March 2006, the District of Columbia Department of Corrections fired Plaintiff, Supervisory Correctional Officer Emmette McCormick. [Doc. 73 at 7.] McCormick says that the events leading to his termination began with two incidents in March 2005, one involving a leak by the Office of Internal Affairs and the other involving a crack cocaine seizure. He says that as a result of these events Internal Affairs retaliated and sought to have him fired. He says that while their initial attempts failed, Internal Affairs later succeeded based on his involvement in a third event in January 2006, where Internal Affairs found that McCormick struck a handcuffed inmate. Michael Tobias.

### A. Leak Incident

McCormick says the chain of events that led to his termination began in March 2005, while he was serving as Acting Captain-in-Charge of the Special Management Unit. [Doc. 73 at 7.] Around this time then-Acting Warden of the Central Detention Facility, Larry Lee Corbett, received official notice that statements taken by then-Internal Affairs Investigator Defendant Wanda Patten in another case had been improperly released. [Doc. 73 at 10] The statements, given by two correctional officers, identified the two correctional officers as witnesses to an inmate's assault of a third correctional officer and contained their home addresses. [Doc. 73 10.] In an attempt to minimize the damage caused by this potentially-dangerous disclosure, Corbett ordered Plaintiff McCormick to search inmates' cells for copies of the Internal Affairs statements. [Doc. 73 at 10-11.] McCormick found unredacted copies of the statements in the cell of one inmate and prepared a report

-2-

Case No. 1:07-CV-570
Gwin, J.

implicating Internal Affairs and Defendant Patten in the leak. [Doc. 73 at 7, 11.] He transmitted his report to Internal Affairs among others. [Doc. 73 at 11.]

### B. Crack Cocaine Incident

McCormick says that Internal Affairs, disgruntled by his accusations, sought his termination in response. [Doc. 73 at 7.] Later in March, 2005, McCormick says he oversaw the seizure of crack cocaine from an inmate's cell. [Doc. 73 at 11.] He arrived after the seizure, examined the seized substance, tested it, and determined that it was crack cocaine. [Doc. 73 at 11-12.] He then directed the officer who had conducted the seizure to prepare a written report of the incident. [Doc. 73 at 12.] The officer's initial report said that the officer had seized the crack with the aid of a drug-sniffing dog. [Doc. 73 at 12.] Subsequently, however, another officer informed McCormick that the dog only assisted the officers after the crack had already been seized. [Doc. 73 at 12.] McCormick says he notified his superiors of this discrepancy and ordered the report corrected. [Doc. 73 at 12.] Shortly thereafter, he says Internal Affairs, under the direction of Defendant Patten, conducted an investigation into the changing of the report. [Doc. 73 at 12.] On June 9, 2005, Defendant Patten produced a report of her findings. [Doc. 73 at 12.]. On August 1, 2005, the then-Internal Affairs Chief transmitted the report to the Deputy Mayor with a recommendation to fire McCormick for some unexplained interference with the investigation of the arrest circumstances. [Doc. 73 at 12.] The Deputy Mayor declined, however, to follow the recommendation. [Doc. 73 at 12.]

### C. Tobias Incident

While some details remain contested regarding the events immediately preceding Plaintiff's termination, the parties do not dispute the general chain of events. On January 13, 2006 a corrections officer mistakenly released a substantial number of inmates from their cells. [Doc. 73 at 13; Doc.

Case No. 1:07-CV-570
Gwin, J.

72 at 5.] Numerous correctional officers, including Plaintiff McCormick responded to order inmates back into their cells. [Doc. 73 at 13; Doc. 72 at 5.] McCormick alleges that while he worked to control the situation, an inmate on a higher floor threw water on him. [Doc. 73 at 13; Doc. 72 at 5.] Uncontradicted witness statements then say that McCormick ordered the inmate he believed responsible, Michael Tobias, to an area of the prison known as the "Sally Port." [Doc. 73 at 16; Doc. 72 at 6.] Some guard-witnesses gave statements testified that McCormick slapped handcuffed inmate Tobias while in the "Sally Port." Other guard-witnesses said they did not see, or were not in a position to see, McCormick strike Tobias. [Doc. 73 at 16–19; Doc. 72 at 6.]

### D. Termination

As McCormick would have it, this would have been the end of this saga but for two intervening events, an investigation of the Tobias incident and his renewed efforts to implicate internal affairs in the leak incident. First, a woman representing herself to be a family member of Michael Tobias emailed a City Council member alleging that Plaintiff McCormick physically mistreated Tobias. [Doc. 73 at 1-2; Doc. 72 at 6.] That email eventually prompted an investigation of the Patten incident by Internal Affairs and overseen by Defendant Patten. [Doc. 73 at 1-2; Doc. 72 at 6.] During the investigation, Defendant Internal Affairs Investigator Patten took statements from numerous witnesses, but did not conduct an adversarial hearing. On March 9, 2006, the investigation culminated in a thirteen-page report, which concluded that "Lt. McCormick struck inmate Michael Tobias across the right side of his face with an open hand at least once while he was handcuffed in the sally port of the Southwest (3) housing unit on January 13, 2006." [Doc. 73-10.] McCormick vehemently contests this conclusion. [Doc. 73 at 26–29.]

Second, McCormick says that on February 13, 2006, while the investigation was taking place,

-4-

Case No. 1:07-CV-570
Gwin, J.

he wrote to Defendant Corrections Director Brown, then recently-appointed as Director of the Department of Corrections, again alleging that Defendant Internal Affairs Investigator Patten was responsible for the leaked statements found in the inmate's cell in March 2005. [Doc. 73 at 31.] McCormick says that after Defendant Brown received this transmission, Defendant Patten relayed the allegations of the Tobias incident to Defendant Brown. [Doc. 73 at 31.] At that point, McCormick says, Corrections Director Brown ordered Internal Affairs to investigate the Tobias incident and placed McCormick on administrative leave. [Doc. 73 at 31.] McCormick's briefing gives no dates for these alleged events.

McCormick says that on the basis of Internal Affairs' report of the Tobias incident, Defendant Corrections Director Brown ordered McCormick fired for cause. [Doc. 73 at 20-21; 31.]

McCormick says that his termination coupled with the Internal Affairs report infringe his constitutionally protected liberty interests, violate DC whistleblower protections, and constitute common-law wrongful discharge. His constitutional claims proceed on two theories. Counts one and two allege that the District, and individual defendants, respectively, deprived McCormick of his constitutionally protected liberty interest in pursuing a career in corrections. [Doc. 3.] Counts three and four allege that his termination coupled with the threat of disclosure of information about the circumstances underlying his termination deprived him of a constitutionally protected liberty interest in his professional reputation. [Doc. 3.] McCormick also says that his termination violated the D.C. Whistleblower Statute, D.C. Code § 615.53(a) because protected disclosures—his reports on the leak incident–were a contributing factor to his termination. [Doc. 3.] Finally, McCormick says that the District wrongfully terminated him because of these disclosures. [Doc. 3.]

Defendants now move for summary judgment. First, they argue that Plaintiff has no liberty

Case No. 1:07-CV-570
Gwin, J.

interest in continued employment because he was an at will employee and that his professional reputation was not defamed. [Doc. 72 at 9–32.] Second, they say that plaintiff did not exhaust administrative remedies under the DC Comprehensive Merit Personnel Act. Third, Defendants Devon Brown and Wanda Patten say they are qualifiedly immune. [Doc. 72 at 32–34.] Fourth, Defendants say that Plaintiff's alleged whistleblowing activities do not fall within the statute's protections. [Doc. 72 at 36–39.] Finally, Defendants say that Plaintiff's wrongful discharge claims are unsubstantiated. [Doc. 72 at 38–39.] Plaintiff counters that materially disputed facts as to each issue warrant a jury trial.

## II.  Summary Judgement

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A defendant moving for summary judgment has the initial burden of showing the absence of a genuine factual issue with respect to one or more essential elements of the plaintiff's claim. *See* *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving defendant meets his burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, (quoting Fed. R. Civ. P. 56(c)). However, the moving defendant is under no "express or implied" duty to "support [his] motion with affidavits or other similar materials negating the opponent's claim." *Id*.

Once the moving defendant satisfies his burden, the burden shifts to the nonmoving plaintiff to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

Case No. 1:07-CV-570
Gwin, J.

*Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving plaintiff may not defeat the summary judgment motion merely by showing some existence of doubt as to the material facts.  *See id.* at 586.  Nor can the nonmoving plaintiff rely upon the mere allegations or denials of her pleadings. Fed.R.Civ.P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).  To be sure, the Court need not conclusively resolve an allegedly disputed issue in favor of the nonmoving plaintiff; rather, the plaintiff must present "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).  Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### III.  Constitutional Claims

Counts I and III charge violations of Plaintiff's constitutionally protected liberty interests.[2/] Termination of a public employee may impair the employee's liberty interest in pursuing a chosen career.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 572–73 (1972).  An employee can make out such a claim in two ways:  First, he may prove that the government's charges in conjunction with termination "might seriously damage his standing and associations in his community." *Id.* at 573; *see also O'Donnell v. Barry*, 148 F.3d 1126, 1139-40 (D.C. Cir. 1998).  Second, he may demonstrate

---

[2/]Counts II and IV also charge constitutional violations against defendants Patten and Brown pursuant to 42 U.S.C. § 1983, but the Court finds that qualified immunity protects these defendants, and so does not discuss these counts here.  *See infra* Part IV.

-7-

Case No. 1:07-CV-570
Gwin, J.

that government "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.*; *see also* O'Donnell 148 F.3d at 1140. In either case, if the employee can show a protected interest, "due process would accord an opportunity to refute the charge." *Id.*

### A. Liberty Interest

*1. Damage to Standing and Association*

Government deprives an employee of a protected liberty interest where it "stigmatiz[es] his good name" in conjunction with "an accompanying loss of government employment." *Mosrie v. Barry*, 718 F.2d 1151, 1160 (D.C. Cir. 1983) (quoting *Paul v. Davis*, 424 U.S. 693, 706 (1976)). "[I]njury to reputation cannot occur in the absence of public disclosure of the allegedly damaging statements. *Orange v. Dist. of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995). An internal report, neither widely circulated "nor made available to the public," does not constitute stigmatization. *Id.* The parties here do not contest that Plaintiff lost his employment, and the Court assumes for the sake of argument that the allegations that plaintiff struck a restrained inmate could damage his reputation. Still, the Court finds no evidence that Defendants "public[ly] disclos[ed]" these allegations.

Plaintiff asserts that the evidence adduced satisfies the public disclosure element in two ways. First, he says that the government need not make public disclosures itself. Instead, it should suffice that he "is required to communicate that [sic] the fact that he was terminated for using excessive force on every government application he is ever going to file" and that private employers likewise require disclosure of his record. [Doc. 73 at 40.] Second, Plaintiff says that Defendants "themselves published the charges against Mr. McCormick by filing their motion for summary judgement on the public record." [Doc. 73 at 40 n.8.]

Case No. 1:07-CV-570
Gwin, J.

Plaintiff errs.[3] First, a requirement that information be transmitted to prospective employers coupled with "[r]estricted disclosure of such material to other federal agencies, with clear limits on further distribution, is not stigmatizing and does not infringe upon constitutional liberty interests." *Doe v. Cheney*, 885 F.2d 898, 910 (D.C. Cir. 1989). Every case of which the Court is aware has presumed that "public disclosure" requires exactly that: The Government must make *public* a stigmatizing allegation. *See Orange*, 59 F.3d at 1274, *Cheney*, 885 F.2d at 910 ("NSA did not make public accusations."); *see also Quinn v. Shirley*, 293 F.3d 315, 320 (6th Cir. 2002) ("[C]harges must be made public . . . . [P]ublic dissemination must have been voluntary."), *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 103 (1st Cir. 2002) (Plaintiff "failed to adduce any evidence that the allegedly stigmatizing statements were disseminated by government actors in a formal setting."). The facts that Plaintiff has adduced fail to satisfy this burden. Moreover, even if the District does transmit Plaintiff's file to other agencies, so long as it limits distribution, such distribution does not infringe his liberty interest. *See Doe*, 885 F.2d at 910.

Plaintiff's second claim, that Defendants "themselves published the charges against Mr. McCormick by filing their motion for summary judgement on the public record," fairs no better. [Doc. 73 at 40 n.8.] Deprivation of a constitutionally protected liberty interest occurs where "stigma[] . . . accompan[ies] loss of government employment." *Mosrie*, 718 F.2d at 1160. The allegedly stigmatizing event in this case–the public filing of documents on August 10, 2010–did not

---

[3] In support of this interpretation of "publicly disclosed," Plaintiff relies on a single quotation from Defendant's Memorandum in Support of Summary Judgement, which cites *Gray v. Union Cnty. Intermediate Ed. Dist.*, 520 F.2d 803, 806 (9th Cir. 1975). That case offers no support for such a reading; instead the Ninth Circuit held that the magnitude of the allegations did not rise to constitutional level. The case thus provides little persuasive authority. The only other case of which this court is aware in which a court held that a note in a personnel file constituted disclosure was overturned on other grounds. *See Jones v. McKenzie*, 628 F. Supp. 1500 (D.D.C. 1986); *rev'd on other grounds* 833 F.2d 335; *vacated* 490 U.S. 1001.

Case No. 1:07-CV-570
Gwin, J.

accompany the loss of employment. The loss of employment, by Plaintiff's own account, took place some four years earlier on March 31, 2006. [Doc. 73 at 1.]

For the foregoing reasons, McCormick has not shown that the Government infringed a protected liberty interest by publicly distributed stigmatizing information about him in conjunction with his termination. Still McCormick's liberty interest claim can proceed if he can show that ~~result~~ Defendants' actions virtually foreclose from employment in the field.

*2. Foreclosure from Employment*

Where government imposes "a stigma or other disability that foreclose[s] . . . freedom to take advantage of other employment opportunities," it deprives a person of constitutionally protected liberty. *Roth*, 408 U.S. at 573. A plaintiff may show that the government's actions have this effect in either of two ways. First, he can show that the government's actions "formally or automatically exclude" him "from other government employment opportunities." *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir.1994). Alternatively, a plaintiff can show that government "action precludes her from pursuing her profession." *Id.* at 1529. McCormick claims the latter. He says that "being dismissed for allegedly hitting a restrained inmate will 'self-evidently' bar Mr. McCormick from further employment in that occupation." [Doc. 73 at 37.] Responding, the Defendants argue that the record contains no such evidence. [Doc. 78 at 4.] With regard to this issue, the Court finds sufficient evidence to raise a triable issue of fact.

At least three criteria govern employability for due process purposes: the nature and severity of the allegation, the range of employment from which a plaintiff claims he is foreclosed, and plaintiff's actual post-termination employment. In *O'Donnell*, the D.C. Circuit found that a demoted police official suffered no deprivation of liberty where the reasons for demotion related to public

-10-

Case No. 1:07-CV-570
Gwin, J.

statements, and he soon found employment as a police chief in a small town. *See* 148 F.3d at 1141. By contrast, *Kartseva* concerned a Russian translator who was denied a security clearance for unknown reasons and claimed that as a result she could not find employment as a Russian translator. *See* 37 F.3d at 1529–30. There, the Court of Appeals found that the translator stated a claim warranting further factual development. *Id.* No evidence shows Plaintiff has been able to find further employment in corrections or a comparable field. He states he is employed as a driver. [Doc. 73-1 at 10.] And McCormick's testimony, given his experience in corrections, provides sufficient evidence to raise a triable issue as to whether his firing for striking a handcuffed inmate would make him unemployable in corrections. [Doc. 73-1 at 9.] While this is a close case, this evidence is sufficient to raise a triable issue of whether he had a liberty interest in future employment that could not be taken without an opportunity to be heard. Still, Plaintiff must show that this deprivation occurred *without due process*.

### B. Due Process

The Due Process Clause guarantees that no person "shall . . . be deprived of life, liberty, or property, *without due process of law*." U.S. Const. amend. V (emphasis added). In cases involving a liberty interest in professional employment, the well-settled remedy "mandated by the Due Process Clause of the [Fifth] Amendment is an 'opportunity to refute the charge.' " *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985) (quoting *Codd v. Velger*, 429 U.S. 624, 627 (1977) (quoting *Roth*, 408 U.S. at 573 )). Where a plaintiff "can demonstrate that [her employer] harmed her professional standing without providing the proper procedural protections, her remedy is a 'name-clearing' hearing." *Id.*

The District says it provided two avenues for McCormick to clear his name. First, during the

Case No. 1:07-CV-570
Gwin, J.

Internal Affairs investigation into the Tobias incident, Plaintiff gave a statement and provided written statements. [Doc. 72 at 15–21.] Second, the District says that Plaintiff should have pursued administrative remedies under the Comprehensive Merit Personnel Act (CMPA). D.C. Code §§ 1-601, *et seq*. [Doc. 72 at 12-15.] In response, McCormick says that the Internal Affairs investigation provided insufficient process because he never saw the evidence against him and had insufficient opportunity to present his side of the case. [Doc. 73 at 41–42.] He further says that the administrative review procedures under the CMPA do not apply to him. [Doc. 73 at 5.] The Court doubts that McCormick's ability to give statements to Internal Affairs Investigator Patten resulted in any procedural due process claim. Because the post-termination procedures provide for a name-clearing hearing, the Court finds that the District provided Plaintiff adequate process irrespective of whether McCormick had a chance to present his position to Internal Affairs Investigator Patten .

By its plain language, the CMPA applies to Plaintiff and gives him the basic safeguard of a name-clearing hearing.[4/] With exceptions not applicable here, the CMPA "appl[ies] to all employees of the District of Columbia government." D.C. Code § 1-602.01. Plaintiff evidently concedes that the CMPA applies to him because he has filed claims under it—namely Count V, which invokes D.C. Code § 1-615.51 *et seq*. [Doc. 73 at 29–35.] And the CMPA provides for a name-clearing hearing: An employee may challenge "an adverse action for cause that results in removal," whereupon "the Office shall review the record and uphold, reverse, or modify the decision of the

---

[4/]Plaintiff relies on a a footnote from *Holman v. Williams*, which says "[p]laintiff's wrongful termination claim is not preempted by the CMPA because the statute offers no administrative recourse to at-will employees for claims related to their termination." 436 F. Supp. 2d 68, 76 (D.D.C. 2006). Yet that footnote was in context of explaining that the CMPA did not preempt that plaintiff's common law wrongful discharge claim. McCormick's strained, plain-text reading goes too far. His constitutional claim is not related to challenging his termination, but instead the facts that foreclose him from future employment. Here, the CMPA provides adequate relief because it permits Plaintiff to challenge the allegations against him and clear his name.

Case No. 1:07-CV-570
Gwin, J.

agency." D.C. Code § 1-606.03(a).

Still, the CMPA procedures must comply with the standard delineated by *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Doe*, 753 F.2d at 1113. *Mathews* requires

> consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews*, 424 U.S. at 334.

The CMPA procedures satisfy these requirements. As to the first *Matthews* factor, McCormick's interest is not a property interest in his position, but a liberty interest related to future employment. While the liberty interest is important, the immediate circumstances of the termination of previous employment are less important:[5/] In cases of "discharge amidst allegations of unprofessionalism" the "remedy is a 'name-clearing hearing.'" *See Doe*, 753 F.2d at 1102. "[N]ame-clearing" suggests that this Court need not determine the precise moment of deprivation, but only whether McCormick received adequate process before the Tobias allegations became indelibly attached to his record. The CMPA provides McCormick these procedures.

Under the CMPA, "[t]he Office [of Employee Appeals] may order oral argument, on its own motion or on motion filed by any party within 15 days, and provide such other procedures or rules and regulations as it deems practicable or desirable in any appeal under this section." D.C. Code §

---

[5/] In suits alleging deprivation of a liberty interest through foreclosure from a career, the moment of deprivation is difficult to discern. It could occur either at McCormick's termination or at the moment he unsuccessfully sought further employment. The import is this: A post-termination name-clearing hearing constitutes pre-deprivation process in the latter case, but does not in the former. While the parties dispute whether McCormick should have received more pre-termination process, this Court need not decide this question. *See Doe*, 753 F.2d at 1114 ("[T]he administrative burdens involved in a post-termination *Codd* hearing do not in any way interfere with the Department's employment decisions.").

Case No. 1:07-CV-570
Gwin, J.

1-606.03(b). Moreover, "[a]ny employee or agency may appeal the decision of the Office to the Superior Court of the District of Columbia for a review of the record and such Court may affirm, reverse, remove, or modify such decision, or take any other appropriate action the Court may deem necessary." D.C. Code § 1-606.03. Almost by definition, judicial review satisfies the second *Matthew's* factor.

Since these procedures are adequate under this set of facts, the Court need not consider the third *Matthews* factor, the government's interest and an alternative set of procedures. In sum, the CMPA satisfies the Due Process requirements of a name-clearing hearing for a plaintiff deprived of a constitutionally protected liberty interest in professional employment in a chosen field.

### IV. Qualified Immunity

The foregoing analysis also suffices to show why qualified immunity protects Defendants Corrections Director Brown and Internal Affairs Investigator Patten. "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In no particular order, "a court must decide whether the facts that a plaintiff has . . . shown (see Rules 50, 56) make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.' " *Pearson v. Callahan*, 555 U.S. 223, 232, (2009); *see id.* at 236. Because McCormick has not shown a violation of a constitutional right, Defendants Brown and Patten are entitled to qualified immunity.

McCormick would have to show that Defendants Brown and Patten publicly disclosed information damaging to his professional reputation or that they foreclosed him from a career in

Case No. 1:07-CV-570
Gwin, J.

corrections without due process. But McCormick presents no evidence that Defendants Brown or Patten disclosed the information in his personnel file. Instead, he says that the findings may force him to disclose the information. [Doc. 73 at 40.] Likewise, the Court finds no evidence that Defendants Brown or Patten denied McCormick a name-clearing hearing under the CMPA. [Doc. 73 at 42–44.] McCormick's claim that "the Deputy Mayor denied his request for a post-termination meeting" does not imply that he was denied a name-clearing hearing under the CMPA nor that Defendants Patton and Brown were involved. [Doc. 73 at 22.] Accordingly, the Court grants Defendants summary judgement on Count II and IV.

### V. Whistleblower Claim

In addition to constitutional claims, Plaintiff also raises claims under the DC whistleblower statute, D.C. Code § 1-615.52, and common law. Plaintiff says the actual motive for his termination was retaliation for his protected disclosures in connection with the leak incident. [Doc. 73 at 31.] He says that each time he repeated the disclosure, Defendants placed him under investigation and sought his termination. Indeed after his initial disclosure, Internal Affairs recommenced his termination in connection with the crack cocaine incident. [Doc. 73 at 31.] While this first retaliation attempt failed, he says that Internal Affairs succeeded in obtaining his termination following the Tobias incident. [Doc. 73 at 31.]

Under the DC whistleblower statute, "[a] supervisor shall not take, or threaten to take, a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order." D.C. Code § 1-615.53(a). An employee so subjected "may bring a civil action against the District." D.C. Code § 1-615.54(a)(1). In the civil suit,

Case No. 1:07-CV-570
Gwin, J.

> once it has been demonstrated by a preponderance of the evidence that an activity proscribed by § 1-615.53 was a contributing factor in the alleged prohibited personnel action against an employee, the burden of proof shall be on the defendant to prove by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by this section.

D.C. Code § 1-615.54(b). A "contributing factor" is " any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." D.C. Code § 1-615.52(a)(2).

The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), framework governs D.C. whistleblower cases. *Johnson v. District of Columbia*, 935 A.2d 1113, 1118 (D.C. 2007). At summary judgement, a plaintiff must "challenge the motion for summary judgment with a proffer of admissible evidence that their "protected activity" . . . was a "contributing factor" in her adverse employment actions. *Id.* Yet even if a plaintiff makes such a proffer, summary judgment for the defendant is nonetheless appropriate where plaintiff "[can]not counter the [defendants']explanation that appellants would have been [disciplined] anyway, for an unrelated, legitimate reason." *Id.* at 1120. In building a prima facie case, "the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion." *Id.* (further citation omitted). And "an inference of retaliation cannot rest solely on 'temporal proximity' (even if it is established) where the opportunity for retaliation conflicts with the opponent's explicit evidence of an innocent explanation of the event." *Id.*

The Court doubts but nonetheless assumes that McCormick has made a prima facie case that his termination was in retaliation for protected disclosures. Yet he has not shown that his termination would not have occurred "for an unrelated, legitimate reason." *Id.* at 1120. The record shows that the Department of Corrections terminated Plaintiff because Internal Affairs found that he struck a

Case No. 1:07-CV-570
Gwin, J.

restrained inmate. [Doc. 72 at 39.] On this point, Plaintiff offers no evidence to the contrary. [Doc. 73 at 35.]

The Court acknowledges that Plaintiff has shown a dispute of fact regarding whether Plaintiff struck a restrained inmate. But whether Plaintiff struck a restrained inmate is a wholly different factual question from whether the Department of Corrections terminated Plaintiff because its investigation found that he had. The latter question controls this claim; the former is irrelevant.

> [A] party cannot stave off a grant of summary judgment merely by filing any type of affidavit, sworn discovery material, or any document that merely happens to touch upon the subject matter of the case. The evidence proffered in opposition to a motion for summary judgment must be, on its own, clearly responsive to the factual requirements for proving liability.

*Id.* at 1122. Here, Plaintiff fails to meet his burden. Plaintiff points to no factual material contesting the "unrelated, legitimate reason" for his termination. *Id.* at 1120. In fact, he cites evidence showing the opposite: "McCormick was terminated for cause 'based on an Internal Affairs investigative finding.'" [Doc. 73 at 21.] Accordingly, the Court grants summary judgement for the District on Plaintiff's whistleblower claim.

### VI. Common Law Wrongful Discharge

Planitiff also claims that his termination constitutes common law wrongful discharge. The parties' briefing is strikingly devoid of legal analysis on this point; they apparently presume that this issue turns on the same questions as Plaintiff's whistleblower claim. These assumptions are misplaced. "Under the Comprehensive Merit Personnel Act ('CMPA'), D.C. Code § 1-601.01 et seq. (2001), such common law claims are preempted." *Lewis v. Dist. of Columbia Dep't of Motor Vehicles*, 987 A.2d 1134, 1137 (D.C. 2010). The force of preemption is particularly strong here because "[t]he Council squarely addressed the issue itself, articulating an express public policy in

Case No. 1:07-CV-570
Gwin, J.

favor of government employee whistleblowing and creating a specific, statutory cause of action to enforce it." *Carter v. Dist. of Columbia*, 980 A.2d 1217, 1226 (D.C. 2009). Accordingly, this Court must "defer to the legislature's prerogatives and to decline to recognize a novel, competing cause of action for wrongful discharge at common law." *Id.* The Court dismisses Plaintiff's wrongful discharge claim for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

### VII. Conclusion

For the foregoing reasons, the Court GRANTS the Defendants' motion for summary judgment as to Counts I through V and DISMISSES Count VI pursuant to Federal Rule of Civil Procedure 12(b)(1).

IT IS SO ORDERED.


Dated: October 22, 2012                                  s/      *James S. Gwin*
                                                                                                           JAMES S. GWIN
                                                                                                           UNITED STATES DISTRICT JUDGE